William P. FORSYTH, et al., Appellants,

v.

**LAKE LBJ INVESTMENT CORP.,**
**et al., Appellees.**

No. 03–94–00284–CV.

Court of Appeals of Texas,
Austin.

July 19, 1995.

Gary L. McConnell, Klement & McConnell, Angleton, for appellants.

Rick Harrison, Jones, Day, Reavis & Pogue, Austin, for appellees.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

ABOUSSIE, Justice.

The Court's earlier opinion issued March 8, 1995 is withdrawn and the following substituted therefor.

This is an interlocutory appeal from a district court order denying class certification. *See* Tex.Civ.Prac. & Rem.Code Ann. § 51.014(3) (West Supp.1995). In their single point of error, appellants [1] contend that the trial court abused its discretion by denying their motion for class certification. We will affirm the order of the district court.

## BACKGROUND

The underlying action involves a dispute over the validity of restrictive covenants that apply to all lot owners in the Horseshoe Bay subdivision ("Horseshoe Bay"), which is located in Burnet and Llano counties. The appellees who were the original plaintiffs below [2] are all developers of Horseshoe Bay. Appellants intervened in the trial court proceeding. Various Horseshoe Bay property owners were defendants below, but are not involved in this appeal.

Restrictive declarations or covenants apply to the Horseshoe Bay properties. Originally adopted by developer Lake Lyndon B. Johnson Improvement Corporation in 1971, the declarations have been amended four times. [3] Defendants below sought to rally support among Horseshoe Bay residents to challenge the enforceability of the declarations. The original plaintiffs below sued in response, seeking a declaratory judgment with respect to the validity of the declarations as well as damages under three causes of action.

Parties intervened on both sides of the action. Twelve Horseshoe Bay property owners intervened to support the original plaintiffs below. Subsequently, appellants and eight others intervened as counter-plaintiffs to support defendants below. Claiming to represent all Horseshoe Bay property owners in a class action, appellants sought a declaratory judgment pronouncing certain amendments to the declarations invalid. Appellants also sought damages on behalf of the class alleging seven causes of action.

Appellants' vigorous attempts to secure greater participation in the action failed. In fact, within three months, three of the intervenors in support of appellants' position dropped out of the lawsuit. Among the lot owners actually participating in the action, the number of those in favor of the declarations exceeded the number opposed.

Seven months after intervening in the action, appellants and one other intervenor filed a motion for class certification. [4] They requested that the trial court certify the intervenors as representatives of a class encompassing all lot owners in the Horseshoe Bay development. All appellees opposed the motion, and a hearing was held. None of the movants appeared at the class certification hearing to testify in person; appellants Christine K. Forsyth and A.L. "Dusty" Rhodes testified through deposition. Appellant James Crownover was the only intervenor supporting the motion who appeared at the hearing and offered live testimony. At the conclusion of the movants' presentation of their evidence at the class certification hearing, the trial court denied class certification. The district court's order does not state the reason for the denial of class certification, and the record does not contain findings of fact or conclusions of law, despite appellants' timely request. *But see* Tex. R.App.P. 42(a) (the trial court need not file findings of fact and conclusions of law). Appellants seek reversal of the trial court's

1. The appellants are William P. Forsyth and Christine K. Forsyth, Trustees of the Forsyth Living Trust; Forsyth Properties, Ltd.; A.L. "Dusty" Rhodes; and James D. Crownover.

2. The appellees who were the original plaintiffs below are Lake LBJ Investment Corp.; Lake Lyndon B. Johnson Improvement Corporation; Horseshoe Bay Maintenance Fund, Inc.; Horseshoe Bay Resort and Conference Center, Inc.; Norman C. Hurd, individually and as executor of the estate of Dorothy E. Hurd, deceased; Norman C. Hurd, Trustee # 1; Wayne Hurd; and Eileen Hurd. Appellees who intervened in support of the original plaintiffs below are Shelton Thibodeaux and Jennie Thibodeaux; Jim Rowe and Melissa Rowe; Al Broome and Renata Broome; Ted Burget and Sally Burget; Roland Wilson and Carolyn Wilson; Sue Ann Mabray; and Faye Morgan.

3. For convenience, we will refer to the declarations and their amendments as "the declarations."

4. Appellant James D. Crownover did not move for class certification; movant Thomas Norwood is not an appellant.

order and ask us to direct the trial court to certify their intervention as a class action.

## STANDARD OF REVIEW

We review a court order denying class certification using an abuse-of-discretion standard. *Hutchins v. Grace Tabernacle United Pentecostal Church*, 804 S.W.2d 598, 601 (Tex.App.—Houston [1st Dist.] 1991, no writ). A trial court has broad discretion in determining whether to grant or deny class certification. *American Express Travel Related Servs. Co. v. Walton*, 883 S.W.2d 703, 707 (Tex.App.—Dallas 1994, no writ h.). An appellate court must not substitute its judgment for that of the trial court. *Id.* Even if a trial court determines an issue differently than would an appellate court, the ruling does not necessarily constitute an abuse of discretion. *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)); *see also Vinson v. Texas Commerce Bank–Houston, Nat'l Ass'n*, 880 S.W.2d 820, 824 (Tex.App.—Dallas 1994, no writ) ("[E]ven if certification would have been proper, a denial may still not be an abuse of discretion.").

In determining whether a matter should be litigated as a class action, a trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to any guiding principles. *Dresser Indus.*, 847 S.W.2d at 371. Further, a trial court abuses its discretion if it does not properly apply the law to the undisputed facts, but does not abuse its discretion if it bases its decision on conflicting evidence. *Vinson*, 880 S.W.2d at 823. To satisfy their burden, appellants must "demonstrate that the undisputed evidence *negates* any valid rationale by which the trial court could have denied class certification." *Id.* at 825. To do this, appellants must provide an appellate record sufficient to demonstrate error. Tex.R.App.P. 50(d); *Employers Casualty Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self–Ins. Fund*, 886 S.W.2d 470, 473 (Tex.App.—Austin 1994, writ requested); *Fort Bend County v. Texas Parks & Wildlife Comm'n*, 818 S.W.2d 898, 900 (Tex.App.—Austin 1991, no writ).

In making its class certification decision, the trial court can consider the pleadings and other material in the record, along with the evidence presented at the hearing. *Employers Casualty Co.*, 886 S.W.2d at 474. The appellate court reviews the entire record to determine if the trial court abused its discretion in denying certification. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852–53 (Tex.1992). We must determine whether the record contains some evidence in support of the order. *Vinson*, 880 S.W.2d at 828. We view the evidence in a light most favorable to the trial court's action, entertaining every presumption that favors its judgment. *Id.* at 823; *see also Texas Dep't of Mental Health & Mental Retardation v. Petty*, 778 S.W.2d 156, 160–61 (Tex.App.—Austin 1989, writ dism'd w.o.j.); *Brittian v. General Tel. Co.*, 533 S.W.2d 886, 889 (Tex. Civ.App.—Fort Worth 1976, writ dism'd) (citing *Richardson v. Kelly*, 144 Tex. 497, 191 S.W.2d 857 (1945)) (observing that trial court's finding as to class certification is entitled to great weight on appeal). If the record supports the court's ultimate decision, we cannot say that the trial court abused its discretion.

## REQUIREMENTS OF CLASS CERTIFICATION

Texas Rule of Civil Procedure 42(a) sets out the following prerequisites for a class action:

(1) the class must be so numerous that joinder is impracticable (numerosity);

(2) questions of law or fact must be common to the class (commonality);

(3) the class representatives must have claims or defenses typical of the class (typicality); and

(4) the class representatives must fairly and adequately protect the interests of the class (adequacy of representation).

Tex.R.Civ.P. 42(a). In addition, Rule 42(b) enumerates the following standards for maintenance of a class action:

(1) individual suits would result in inconsistent or varying adjudications;

(2) an adjudication concerning an individual member would be dispositive of interests of other members, or would substantially impair the ability of those members to protect their interests;

(3) the party opposing the class has acted or refused to act on grounds generally applicable to the class;

(4) the suit affects specific property; and

(5) common questions of law or fact predominate over questions affecting only individual members, and a class action is the superior method of resolving the controversy.

Tex.R.Civ.P. 42(b). A trial court *may* certify a class action if a plaintiff establishes all four prerequisites in Rule 42(a), and meets at least one of the criteria for class maintenance in Rule 42(b). *See Vinson,* 880 S.W.2d at 824 (observing that Texas law does not require trial court to certify class action even if plaintiff satisfies Rule 42 requirements).

■■■■ The record reflects that appellants established the numerosity, commonality, and typicality prerequisites. Numerosity is not disputed.[5] Commonality is evident. If the trial court were to determine the enforceability of the declarations as to one Horseshoe Bay resident, the adjudication would resolve the issue as to all other residents simultaneously. Additionally, appellants' claims are typical of those of the class; appellants possess the same interests as all other owners of Horseshoe Bay property. In theory, all class members have the same claims as appellants, even though it may not be in their best interests to assert their claims.[6] However, appellants have failed to demonstrate their adequacy of representation.

## ADEQUACY OF REPRESENTATION

■■■■ To comply with the adequacy of representation prerequisite, appellants must show that the class representatives will fairly and adequately protect the interests of the class members. Tex.R.Civ.P. 42(a)(4). This requirement has two basic components: (1) an absence of antagonism between the class representatives and the class members, and (2) an assurance that the representatives will vigorously prosecute the class members' claims and defenses. *Wiggins v. Enserch Exploration, Inc.,* 743 S.W.2d 332, 335 (Tex. App.—Dallas 1987, writ dism'd w.o.j.). Whether the representatives adequately represent the class is a question of fact, which must be determined by reference to the circumstances of each case. *Dresser Indus., Inc.,* 847 S.W.2d at 373. Factors affecting the determination include:

(1) adequacy of counsel;

(2) potential conflicts of interest;

(3) the personal integrity of the plaintiffs;

(4) the representatives' familiarity with the litigation and their belief in the legitimacy of the grievance;

(5) whether the class is unmanageable based on geographical limitations; and

(6) whether the plaintiffs can afford to finance the class action.

*Id.; see also Adams v. Reagan,* 791 S.W.2d 284, 291 (Tex.App.—Fort Worth 1990, no writ) (citing *Horton v. Goose Creek Indep. Sch. Dist.,* 690 F.2d 470, 484 (5th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983)) ("[T]he trial court must inquire into the zeal and competence of class counsel and into the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees.").

**5.** Appellants presented proof that potential class membership would exceed 6,600 Horseshoe Bay lot owners. Conceding that the numerosity requirement was satisfied, appellees did not present contrary evidence.

**6.** *See Horton v. Goose Creek Indep. Sch. Dist.,* 690 F.2d 470, 485 n. 27 (5th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983). According to the court in *Horton,* typicality and adequacy of representation are closely related, "for demanding typicality on the part of the representative helps insure his adequacy of representation." *Id.* Because some analytical overlap necessarily occurs in ascertaining whether these two prerequisites are satisfied, it makes organizational sense to consolidate our inquiry. As did the *Horton* court, we will analyze the question of intra-class antagonism under the adequacy of representation requirement.

### (1) Intra–Class Antagonism

We first examine whether any antagonism exists between the class representatives and the class members. A conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Adams,* 791 S.W.2d at 291. Federal cases offer guidance on this issue.[7] In *Horton v. Goose Creek Independent School District,* 690 F.2d 470 (5th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983), the court addressed the relationship between intra-class antagonism and the adequacy of representation prerequisite. According to the court, class certification may be denied for lack of adequate representation if there is a *possibility* of significant disagreement within the proposed class. *See id.* at 485–86; *see also Swain v. Brinegar,* 517 F.2d 766, 780 (7th Cir.1975) (denying certification for lack of adequate representation because possibility existed that some class members would not support class action); *Ihrke v. Northern States Power Co.,* 459 F.2d 566, 572–73 (8th Cir.1972) (denying certification for lack of typicality because some class members *might* oppose objectives of class action). Furthermore, where there is "hard evidence of real disagreement" within the class, courts are more inclined to deny certification. *Horton,* 690 F.2d at 485; *see also East Tex. Motor Freight Sys. Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977) (denying certification for lack of adequate representation because, in part, certain class members voted against named plaintiffs' objectives at union meeting); *Peterson v. Oklahoma City Hous. Auth.,* 545 F.2d 1270, 1273 (10th Cir.1976) (finding that antagonism existed and that certification should be denied for lack of adequate representation where many potential class members openly opposed object of action). In any event, the party opposing certification has only a slight evidentiary burden to show that intra-class antagonism may develop. *Horton,* 690 F.2d at 486.

In the instant cause, the validity of the declarations is not only the subject matter of the underlying litigation, but also the source of the dispute between the proposed representatives and the opposing twelve intervening class members. The opposition of twelve class members does not, by itself, indicate that a majority of the class members opposes appellants' position. However, among the class members actively participating in the action, those opposing appellants outnumber those who support them. This division constitutes actual intra-class antagonism. Such an inconsistency between appellants' interests and those of class members regarding the very subject matter of the litigation weighs against appellants' claim of representative status. *Adams,* 791 S.W.2d at 291.[8]

Appellants rely on *Horton* for the proposition that certification would be appropriate, notwithstanding the presence of intra-class antagonism, because appellees would adequately represent the interests of any dissident absentee class members.[9] *Horton* is distinguishable because actual intra-class antagonism, as opposed to the mere possibility of antagonism, exists in the instant case. The possibility that appellees, and those class members intervening to support appellees,

---

7. Because Rule 42 is patterned after the federal class action rule, cases interpreting the federal rule are persuasive. *Ball v. Farm & Home Sav. Ass'n,* 747 S.W.2d 420, 422–23 (Tex.App.—Fort Worth 1988, writ denied); *RSR Corp. v. Hayes,* 673 S.W.2d 928, 931–32 (Tex.App.—Dallas 1984, writ dism'd).

8. The record also reflects previous legal disputes between two proposed representatives and certain appellees. In addition, we note that the record suggests that the challenged declarations were unanimously ratified by the elected Board of Directors of the Horseshoe Bay Property Owners' Association.

9. The defendant in *Horton,* who opposed the class action, offered no proof of actual antagonism within the proposed class. Rather, he asserted that the mere possibility of antagonism existed because no potential class members, other than the three named plaintiffs, complained about the practices in question. *Horton,* 690 F.2d at 485. Agreeing with the defendant that "a very real possibility" of antagonism existed among the proposed class members, the court observed that class certification may be denied in such circumstances. *Id.* However, the court went on to certify the class, reasoning that the defendant would adequately represent the views of any dissenting absentee class members. *Id.* at 487–88.

will represent any dissenting views within the class is a factor to be weighed in determining adequacy of representation. However, it does not mandate class certification when intra-class antagonism actually exists.[10]

### (2) Zealous Representation

■ Next, we consider whether the representatives would avidly pursue the claims and defenses of the class members. Although an attorney represented appellants at the class certification hearing, the failure of the movants for class certification and all but one intervenor to attend the hearing in person casts doubt upon the enthusiasm with which the proposed representatives would act on behalf of the class. Appellants relied almost entirely on their counsel at the certification hearing. This fact weighs against certification. *See Adams,* 791 S.W.2d at 291 (providing that trial court must consider whether representatives will "take an active role in and control the litigation ... to protect the interests of absentees" in determining adequacy of representation prerequisite).

Federal authority is instructive on the issue of zealous representation. In *Weisman v. Darneille,* 78 F.R.D. 669 (S.D.N.Y.1978), the court denied class certification because representation was inadequate. In support of its decision, the court wrote:

> Plaintiff's superfluous role here does not meet the requirements of Rule 23(a)(4). The class is entitled under that rule to more than competent counsel. It must also be assured that it will have an adequate representative, one who will check the otherwise unfettered discretion of counsel in prosecuting the suit and who will provide his personal knowledge of the facts underlying the complaint.... Plaintiff's evident willingness to rely on counsel's ability to protect the interests of the class is inconsistent with the participation required of an adequate class representative.

*Id.* at 671. Similarly denouncing apathetic class representation, another court wrote: "The class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives." *In re Goldchip Funding Co.,* 61 F.R.D. 592, 594 (M.D.Pa.1974); *see also Pashek v. Arizona Bd. of Regents,* 82 F.R.D. 62, 64 (D.Ariz.1979) (finding class representation inadequate because representative passively acquiesced to decisions of her attorney in seeking class certification).

### CONCLUSION

The record shows that obvious antagonism exists between appellants and at least twelve class members who intervened and oppose appellants' objectives. This antagonism regarding the very subject matter of the underlying litigation suggests a real possibility of conflict between a significant number of the proposed class members and those who seek to be class representatives. Moreover, the record does not indicate that appellants have zealously pursued the class members' claims and defenses; they have neither taken an active role in nor taken control of the litigation. In light of the record evidence, we cannot say that appellants or other intervenors will adequately and fairly protect the

---

**10.** *Horton* is also distinguishable from the instant case based on a difference between the federal and Texas class action rules. Under the federal rule, absent class members have the right to opt out of the class action. Fed.R.Civ.P. 23(c). The theory behind this procedural escape hatch is that courts are reluctant to bind people to class action judgments that they do not approve. *Horton,* 690 F.2d at 487. Thus, with the opt-out provision in mind, a number of federal courts have certified class actions despite substantial intra-class antagonism. *See id.* at 485 (and cases cited therein).

The Texas class action rule does not contain a comparable provision. Instead of opting out of the action, absentee class members opposing their inclusion in the class action may only "appear before the court and challenge the court's determinations as to the class and its representatives." Tex.R.Civ.P. 42(c)(2). In the instant case, twelve potential class members intervened in the underlying litigation. Together with any other proposed class members who oppose the class action, those intervenors cannot opt out if the class is certified. Instead, they would be forced to support an action that is antagonistic to their own interests simply because they live in Horseshoe Bay. *See Pashek v. Arizona Bd. of Regents,* 82 F.R.D. 62, 64 (D.Ariz.1979) (recognizing that heightened standard of scrutiny applies in determining adequacy of representation when opt-out provision of federal class action rule does not apply).

interests of the class members. The record suggests a reasonable basis for the trial court to have denied class certification for lack of adequate representation.

Even though a case concerning the construction of restrictive covenants is uniquely suited for a class action,[11] the trial court has broad discretion in determining whether to grant or deny class certification. From the record, the trial court could have determined that appellants and the other intervenors may not adequately and fairly protect the interests of the class. Based on the record, we cannot say that the trial court abused its discretion when it denied class certification. Appellants have failed to prove that the un-

disputed evidence negates any valid rationale by which the trial court could have denied certification. Because appellants have not demonstrated that they met the adequacy of representation prerequisite required by Rule 42(a), we do not reach the Rule 42(b) elements. Accordingly, we overrule appellants' point of error and affirm the order of the trial court.

---

**11.** *See Townplace Homeowners' Ass'n v. McMahon,* 594 S.W.2d 172, 177 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) ("A suit for construction of restrictive covenants is especially suited for class action litigation."); *Adams v. Owens,* 519 S.W.2d 260, 261 (Tex.Civ.App.— Beaumont 1975, writ ref'd n.r.e.) (recognizing that construction of restrictive covenants "is a question touching each owner of lots in [an] addition, with common questions of law and fact," and noting "that this is the type of situation uniquely designed for a class action").