TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00766-CV







Henry Schein, Inc.; Easy Dental Systems, Inc.; and Dentisoft, Inc., Appellants



v.



Shelly E. Stromboe, D.D.S.; Alan B. Helig, D.D.S.; Bart Presti, D.D.S.; Kelly Presti;


and Jeanne N. Taylor, D.D.S. on behalf of themselves and all


others similarly situated, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 98-00886, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING








 This is an interlocutory appeal from a trial court order certifying a class action. See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(3) (West Supp. 2000). In five issues, appellants
Henry Schein, Inc., Easy Dental Systems, Inc., and Dentisoft, Inc. contend that the trial court
abused its discretion in certifying the class because appellees failed to satisfy certain prerequisites
under subsections (a) and (b) of rule 42 of the Texas Rules of Civil Procedure. We will affirm
the order granting class certification.


FACTUAL AND PROCEDURAL BACKGROUND


 Henry Schein, Inc. ("Schein") claims to be the nation's largest seller of dental office
supplies and equipment. In 1995, one of Schein's subsidiaries, Easy Dental Systems, Inc., began
selling two computer software packages designed to aid dentists in the management of their office
records. The Windows versions of the software were called "Easy Dental Lite" and "Easy Dental
for Windows." The DOS version was called "Easy Dental for DOS."

 In 1998, two dentists who had purchased the software, Dr. Shelly Stromboe and
Dr. Jeanne Taylor, filed suit against Schein and its subsidiaries, Easy Dental Systems, Inc. and
Denti-Soft, Inc. (collectively, "Easy Dental"), seeking to hold them jointly and severally liable 
for breach of contract, breach of express and implied warranties, fraud, negligent
misrepresentation, promissory estoppel, and violations of the Texas Deceptive Trade
Practices--Consumer Protection Act (the "DTPA"). See Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 2000). Specifically, Stromboe alleged that the Windows versions of the
software were defective. The problems Stromboe experienced with the software ranged in severity
from minor malfunctions to complete operational failures.(1) Taylor alleged that after purchasing
the DOS version of the software, Easy Dental charged her for technical support despite its promise
to provide the service for free. Taylor also alleged that Easy Dental sent her unsolicited software
enhancements and upgrades, forcing her either to pay for the software or return it. Both Taylor
and Stromboe complained that Easy Dental had falsely represented that its software would be fit
for managing their office data and patient records. Shortly after filing their petition, Stromboe and
Taylor filed a motion requesting certification of a nationwide class of similarly situated plaintiffs,
which they alleged to be approximately 20,000 in number. 

 From November to July 1998, the parties conducted extensive discovery regarding
the merits of the case and the propriety of class certification. Following a five-day evidentiary
hearing on the issue of class certification, the trial court signed an order granting appellees' motion
for class certification on November 1, 1999.(2) The trial court divided the plaintiff class into two
subclasses--the "Windows subclass" and the "DOS subclass." The Windows subclass included
"[a]ll purchasers of Easy Dental Windows software prior to Easy Dental 98, including Easy Dental
Lite and Easy Dental version 2.0, 2.1, 2.39, 2.41, 3.0, 3.01, 3.02 and 3.03." The DOS subclass
included "[a]ll purchasers and/or persons who received Easy Dental DOS software releases up to
and including version 10.0." The trial court named Stromboe representative of the Windows
subclass. Dr. Alan Helig and Dr. Kelly Presti were appointed representatives of the DOS
subclass.(3) On November 16, 1999, the trial court issued findings of fact and conclusions of law,
stating in part:


In light of the amount any individual Plaintiff could recover in this case and the fact
that Plaintiffs are owners and operators of small businesses, the Court finds that the
economics of pursuing their claims individually would not be feasible for the
members of both the DOS and Windows subclasses. The joinder of all members
is not practicable in view of the size of the class and judicial economy, the nature
of the action, geographical locations of class members, and the likelihood that class
members would be unable to prosecute individual lawsuits.



 Easy Dental then filed this interlocutory appeal, maintaining that the trial court
abused its discretion in certifying the class under rule 42(b)(4) because (1) common issues do not
predominate over individual issues; (2) the trial court failed to conduct a proper conflict-of-law
analysis; (3) the claims of the class representatives are not typical of the absent class members'
claims; and (4) the class representatives will not adequately represent the interests of the absent
class members. Finally, Easy Dental argues that mandatory class certification under rule
42(b)(1)(A) is improper because (5) the suit is one primarily for monetary damages, rather than
injunctive relief.


STANDARD OF REVIEW

 Trial courts enjoy broad discretion in deciding whether to grant or deny a motion
for class certification. See Rainbow Group, Ltd. v. Johnson, 990 S.W.2d 351, 356 (Tex.
App.--Austin 1999, pet. dism'd); Vinson v. Texas Commerce Bank--Houston, N.A., 880 S.W.2d
820, 823 (Tex. App.--Dallas 1994, no writ). On appeal, our review is strictly limited to
determining whether the trial court abused its discretion in ordering class certification. See
Rainbow Group, Ltd., 990 S.W.2d at 356; Vinson, 880 S.W.2d at 823. We may not substitute
our judgment for that of the trial court. See Rainbow Group, Ltd., 990 S.W.2d at 356; Vinson,
880 S.W.2d at 823. That the trial court, in the opinion of the appellate court, made an error in
judgment does not alone demonstrate an abuse of discretion. See Rainbow Group, Ltd., 990
S.W.2d at 356; Dresser Indus., Inc. v. Snell, 847 S.W.2d 367, 371 (Tex. App.--El Paso 1993,
no writ). Rather, a trial court abuses its discretion in certifying a class if it fails to properly apply
the law to the undisputed facts or acts arbitrarily, unreasonably, or without reference to any
guiding principles. See Rainbow Group, Ltd., 990 S.W.2d at 356; Vinson, 880 S.W.2d at 823. 
A trial court does not abuse its discretion if its decision is based on conflicting evidence. See
Rainbow Group, Ltd., 990 S.W.2d at 356; Vinson, 880 S.W.2d at 823.

 In deciding whether to grant class certification, a trial court may consider the
pleadings and other material in the record, along with any evidence presented at the hearing. See
Rainbow Group, Ltd., 990 S.W.2d at 356-57; Employers Cas. Co. v. Texas Ass'n of Sch. Bds.
Workers' Compensation Self-Ins. Fund, 886 S.W.2d 470, 474 (Tex. App.--Austin 1994, writ
dism'd w.o.j.). The evidence on which a trial court bases its certification ruling need not be in
a form necessary to be admissible at trial. See Texas Commerce Bank Nat'l Ass'n v. Wood, 994
S.W.2d 796, 801 (Tex. App.--Corpus Christi 1999, pet. dism'd); Microsoft Corp. v. Manning,
914 S.W.2d 602, 615 (Tex. App.--Texarkana 1995, writ dism'd). In our review of the trial
court's decision, we view the evidence in the light most favorable to the trial court's action and
entertain every presumption in favor of its judgment. See Rainbow Group, Ltd., 990 S.W.2d at
357; Vinson, 880 S.W.2d at 823.

GENERAL REQUIREMENTS OF CLASS CERTIFICATION


 The Texas Supreme Court recently observed that "[w]hen properly applied the class
action device is unquestionably a valuable tool in protecting the rights of our citizens." 
Southwestern Refining Co., Inc. v. Bernal, 43 Tex. Sup. Ct. J. 706, 715 (May 11, 2000). Indeed,
class action suits furnish an efficient means for numerous claimants with a common complaint to
obtain a remedy where it is not economically feasible to obtain relief within the traditional
framework of a multiplicity of small individual suits for damages. See Nissan Motor Co., Ltd. v.
Fry, No. 13-99-199-CV, slip op. at 6 (Tex. App.--Corpus Christi Aug. 17, 2000, no pet. h.)
(citing General Motors v. Bloyed, 916 S.W.2d 949, 952-53 (Tex. 1996)). Quoting the United
States Supreme Court, the Texas Supreme Court noted in Bernal:


[T]he very core of the class action mechanism is to overcome the problem that
small recoveries do not provide the incentive for any individual to bring a solo
action prosecuting his or her rights. A class action solves this problem by
aggregating the relatively paltry potential recoveries into something worth
someone's (usually an attorney's) labor. 




Bernal, 43 Tex. Sup. Ct. J. at 715 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617
(1997)). At the same time, the Texas Supreme Court cautioned that "fairness and justice to all
concerned require adherence to certification standards," and it insisted that courts perform a
"rigorous analysis" before ruling on a motion for class certification so as to ensure that all of the
prerequisites have been met. See id.


 In this case, the trial court found that all requirements for class certification had
been satisfied under rule 42(a) and rule 42(b)(4). Rule 42(a) provides:


One or more members of a class may sue or be sued as representative parties on
behalf of all only if (1) the class is so numerous that joinder of all members is
impracticable, (2) there are questions of law or fact common to the class, (3) the
claims or defenses of the representative parties are typical of the claims or defenses
of the class, and (4) the representative parties will fairly and adequately protect the
interests of the class.



Tex. R. Civ. P. 42(a). These four factors are commonly referred to respectively as the
requirements for "numerosity," "commonality," "typicality," and "adequacy of representation." 
See, e.g., Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 150 (Tex. App.--Austin 1995, writ
dism'd w.o.j.). Having determined that the four preliminary requirements under subsection (a)
were satisfied, the trial court in this case certified the class under subsection (b)(4).(4) Certification
under rule 42(b)(4) is appropriate when "the court finds that the questions of law or fact common
to the members of the class predominate over any questions affecting only individual members,
and that a class action is superior to other available methods for the fair and efficient adjudication
of the controversy." Tex. R. Civ. P. 42(b)(4). Matters pertinent to these findings include:


(A) the interest of members of the class in individually controlling the prosecution
or defense of separate actions; (B) the extent and nature of any litigation concerning
the controversy already commenced by or against members of the class; (C) the
desirability or undesirability of concentrating the litigation of the claims in a
particular forum; (D) the difficulties likely to be encountered in the management
of a class action.



Id. 

 Although the class proponents bear the burden of establishing that all four
requirements of rule 42(a) and at least one of the requirements under rule 42(b) are satisfied, see
Rainbow Group, Ltd., 990 S.W.2d at 356, they are not required to prove a prima facie case of
liability or make an extensive evidentiary showing in to be entitled to class certification. See Tana
Oil & Gas Corp. v. Bates, 978 S.W.2d 735, 739 (Tex. App.--Austin 1998, no pet.); Union Pac.
Resources Co. v. Chilek, 966 S.W.2d 117, 120 (Tex. App.--Austin 1998, pet. dism'd w.o.j.);
Weatherly v. Deloitte & Touche, 905 S.W.2d 642, 647 (Tex. App.--Houston [14th Dist.] 1995,
writ dism'd w.o.j.).


DISCUSSION

Certification under TRCP 42(b)(1)(A)

 We begin by addressing Easy Dental's contention that the trial court abused its
discretion in certifying the class under rule 42(b)(1)(A) because appellees seek as their primary
relief monetary damages rather than injunctive relief.(5) We need not reach the merits of this
argument, though, because appellees expressly waived any certification under rule 42(b)(1)(A)
both in their brief and at oral argument, explaining that they have no intention of trying the case
as a mandatory class action under rule 42(b)(1)(A). In response, Easy Dental cites rule 42(e) of
the Texas Rules of Civil Procedure and asserts that appellees cannot waive the trial court's
certification under rule 42(b)(1)(A) without first obtaining the trial court's approval. See Tex. R.
Civ. P. 42(e) ("A class action shall not be dismissed or compromised without the approval of the
court, and notice of the dismissal or compromise shall be given to all members of the class in such
a manner as the court directs."). However, appellees are not attempting to dismiss or compromise
their causes of action. Rather, they are merely conceding that certification of a mandatory class
under rule 42(b)(1) is inappropriate in this case and are indicating their intention to proceed only
as an opt-out class under rule 42(b)(4).

 Even if we were to hold that the trial court's certification under rule 42(b)(1) was
an abuse of discretion, we would nevertheless conclude--as we do in our discussion of Easy
Dental's second point of error--that certification was appropriate under rule 42(b)(4). 
Consequently, Easy Dental is unable to show that any alleged error by the trial court was harmful
error. See Tex. R. App. P. 44.1(a); Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); Malone
v. E.I. du Pont de Nemours & Co., 8 S.W.3d 710, 716-17 (Tex. App.--Fort Worth 1999, pet.
filed). Accordingly, we overrule Easy Dental's first point of error.



Predominance


 In its second point of error, Easy Dental argues that the trial court abused its
discretion in ordering class certification under rule 42(b)(4)(6) because common questions of law and
fact do not predominate. Although Easy Dental concedes that some common issues of law and
fact exist, it contends that any such questions are outweighed by the proliferation of individualized
questions of law and fact, specifically issues of causation, reliance, and damages. It also maintains
that many of the common issues identified by the trial court are not in fact common. 

 A common question of law or fact exists when the answer as to one class member
is the answer as to all class members. See Weatherly, 905 S.W.2d at 648; RSR Corp. v. Hayes,
673 S.W.2d 928, 932-33 (Tex. App.--Dallas 1984, writ dism'd). Those questions that do not
produce common answers are not common questions under rule 42. See Wente v. Georgia-Pac.
Corp., 712 S.W.2d 253, 257 (Tex. App.--Austin 1986, no writ). In its most recent discussion
of the predominance requirement, the Texas Supreme Court stated:


Courts determine if common issues predominate by identifying the substantive
issues of the case that will control the outcome of the litigation, assessing which
issues will predominate, and determining if the predominating issues are, in fact,
those common to the class. The test for predominance is not whether common
issues outnumber uncommon issues but, as one court stated, whether common or
individual issues will be the object of most of the efforts of the litigants and the
court. If, after common issues are resolved, presenting and resolving individual
issues is likely to be an overwhelming or unmanageable task for a single jury, then
common issues do not predominate. Ideally, a judgment in favor of the class
members should decisively settle the entire controversy, and all that should remain
is for other members of the class to file proof of their claim.



Bernal, 43 Tex. Sup. J. at 710-11 (emphasis added) (internal quotations and citations omitted). 

 The supreme court then explained that the predominance requirement "is intended
to prevent class action litigation when the sheer complexity and diversity of the individual issues
would overwhelm or confuse a jury or compromise a party's ability to present viable claims or
defenses." Id. at 711. The court criticized many courts of appeals for their lax application of the
predominance requirement and emphasized that courts must perform a "rigorous analysis." See
id. at 712. While observing that "it may not be an abuse of discretion to certify a class that could
later fail," the supreme court stressed that "a cautious approach to class certification is essential." 
Id. Furthermore, it added that "[i]f it is not determinable from the outset that the individual issues
can be considered in a manageable, time-efficient, yet fair manner, then certification is not
appropriate." Id. Keeping these principles in mind, we now turn to the facts and circumstances
of the case at hand and examine them through a prism of "rigorous analysis" to determine whether
common issues predominate over the individual issues. 

 Our review of the record suggests that the trial court was indeed diligent in applying
the rigorous analysis necessary for class certification. Certainly, there is no indication that the
trial court chose to "certify now and worry later." See id. at 711 (expressly disapproving of such
tendencies). Over the course of five days, the trial court heard extensive argument and considered
an immense amount of evidence concerning all issues relevant to class certification. At the
hearings, both sides elicited live testimony and together produced twelve bound volumes of
documents containing more than 180 exhibits. In its findings of fact and conclusions of law, the
trial court concluded that the DOS subclass shared many common issues of law and fact, including
questions of (1) whether Easy Dental promised members of the subclass free and unlimited
technical support; (2) whether Easy Dental breached this agreement; (3) whether Easy Dental was
negligent in representing that it would provide free and unlimited technical support; (4) whether
members of the subclass were denied the benefit of their bargain as a result of any failure by Easy
Dental to provide such technical support; (5) whether any failure by Easy Dental to provide
technical support was fraudulent or a violation of the DTPA; (6) whether members of the subclass
relied upon Easy Dental's promises of free technical support and suffered damages as a result; (7)
whether members of the subclass are entitled to recovery under a claim of promissory estoppel;
(8) whether Easy Dental mailed unsolicited enhancements and upgrades of DOS software to
subclass members, requiring them either to purchase the software or return it; and (9) whether
Easy Dental's mailing, if any, of unsolicited software enhancements and upgrades to members of
the subclass was a violation of the Texas Business and Commerce Code.(7)

 With respect to the Windows subclass, the trial court found that common factual
and legal issues included questions of (1) whether the Windows software was defective; (2)
whether members of the subclass failed to receive the benefit of their bargain; (3) whether Easy
Dental's sale of the software constituted a breach of contract; (4) whether Easy Dental's
representations in its advertisements and other communications with the subclass were false,
misleading, or deceptive; (5) whether any of Easy Dental's misrepresentations about the Windows
software violated the DTPA; (6) whether any such misrepresentations constitute an unconscionable
action or course of action under the DTPA; (7) whether Easy Dental breached any of its express
warranties; (8) whether Easy Dental's limitations of warranty are enforceable; (9) whether Easy
Dental knowingly sold defective software; and (10) whether members of the subclass are entitled
to recover under a theory of promissory estoppel.

 Our review of the record in this case leads us to conclude that the trial court was
correct in its determination that these issues were common and would predominate at trial over
any individual issues. The depositions and documentary evidence comprising the bulk of the
record directly relate to the issues referenced by the trial court in its findings of fact and
conclusions of law--namely the nature of the defects in Easy Dental's software, the extent of Easy
Dental's knowledge of those defects, Easy Dental's alleged uniform misrepresentations about the
software and the technical support that it would provide, and Easy Dental's alleged common
scheme of sending and billing class members for unsolicited software. It is clear from both the
evidence in the record and the arguments of the parties at the class certification hearing that these
common issues are the most heavily disputed and will be the focus of most of the trial court's and
parties' efforts.

 Relying on Bernal, Easy Dental nevertheless maintains that to the extent any of
these issues are common, they do not predominate over the issues requiring individualized
determinations. To address this argument adequately, we must first briefly discuss the particular
circumstances in Bernal. The controlling issue in that case was the propriety of certifying a class
action of 904 plaintiffs against Southwestern Refining Company for personal injuries they
allegedly sustained as a result of a refinery tank fire in Corpus Christi, Texas. Holding that
common issues did not predominate over the individual issues, the Texas Supreme Court reversed
the court of appeals' certification order and remanded the case to the trial court. See Bernal, 43
Tex. Sup. Ct. J. at 715.

 While we recognize that the supreme court's holding in Bernal applies with equal
force to all class actions, whether they may be personal injury suits or suits based on claims of
breach of contract or fraud, it is nevertheless important to note that the facts and issues in this case
are quite different from those noted by the court in Bernal. As the supreme court observed,
"Personal injury claims will often present thorny causation and damage issues with highly
individualistic variables that a court or jury must individually resolve." See id. at 712 (citing
Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)). Consequently, the class action will
rarely be an appropriate device for resolving them. See id.; see also Fed. R. Civ. P. 23 Advisory
Committee Note, 39 F.R.D. 98, 103 (1966). Under the facts of Bernal, resolution of the central
issues of causation and damages was uniquely dependent upon each individual class member
because the exposure levels and severity of the injuries varied from member to member. This was
due in part to the fact that the proximity of the proposed plaintiff class members' homes to the
explosion varied greatly, as did the physical location of the class members themselves at the time
of the explosion. While some class members were inside their homes at the time of the explosion,
others were outside, in their automobiles, or out of town. See Bernal, 43 Tex. Sup. Ct. J. at 713. 
Thus, each member's dosage, proximity, activity, age, medical history, sensitivity, and credibility
had to be determined individually, and the supreme court in Bernal concluded that under those
circumstances individual issues predominated. See id.

 In contrast to Bernal, the present suit is an action brought by purchasers of two
related computer software applications who complain of a common design defect, uniform
misrepresentations about the availability of free technical support services, and a common scheme
of sending and billing class members for unsolicited software upgrades and enhancements. As
their primary measure of damages, the class members seek the benefit of their bargain and
exemplary damages pursuant to liability under the DTPA. Here, we are not faced with a wide
array of factors that together demand individualized inquiries into issues of causation and damages. 
Rather, the most critical inquiries at issue are questions of law and fact common to the entire class,
including whether Easy Dental sold defective software and whether it did so knowingly; whether
Easy Dental made common misrepresentations about its software and technical services; and
whether Easy Dental engaged in a common scheme of sending and billing class members for
unsolicited products.

 Of these common issues, the breach-of-contract question is one of the most
significant. Once a jury answers the question of whether the software contains a programming
defect as to one class member, it will be answered as to all; if the software program on which all
the software packages operate is defective, every class member has received less than the benefit
of his or her bargain. Likewise, as the trial court noted in its findings of fact and conclusions of
law, the issue of damages can be determined on a class-wide basis from Easy Dental's own
business records because appellees seek as their primary measure of damages the disgorgement
of the amounts they paid Easy Dental for the software. Consequently, the damages issue will not
require the time-consuming, individualized inquiries that Easy Dental predicts.(8) Finally, the issue
of exemplary damages is also a common one that may be resolved by asking a jury whether Easy
Dental committed the alleged actions knowingly, if at all. Taken together, all of appellees'
complaints center around Easy Dental's common course of conduct in designing and marketing
its computer software. Consequently, the focus of the trial court's inquiry will be on the conduct
of Easy Dental, not on the conduct of the individual class members.

 We are not persuaded by appellant's argument that individual questions involving
reliance, the form and substance of every misrepresentation allegedly made to each individual class
member, and the amount of each class member's consequential damages will overshadow these
pivotal issues and result in an unmanageable proliferation of individual issues. To be sure, some
of these issues may demand some individualized inquiry. But as we will explain, the common
issues of fact and law central to this suit nevertheless predominate.


 First, we point out that the issue of reliance is relevant only in regard to appellees'
claims for common-law fraud. However, in practical effect, the common-law fraud allegation in
this case is ancillary to and subsumed by appellees' DTPA claim,(9) which itself was merely added
as a practical means of obtaining a one-time award of punitive damages. Because appellees seek
disgorgement of the software's purchase price as their primary measure of damages for breach of
contract and allege the fraud and DTPA violations solely for the purpose of recovering exemplary
damages, reliance is not a critical issue in this case.

 Second, in class actions involving allegations of fraudulent misrepresentations, it
is important to distinguish between those cases where the alleged misrepresentations vary in each
transaction from instances where the alleged misrepresentations are substantially the same as to
all class members. Certainly, when the alleged misrepresentations differ there is a danger that the
class action will disintegrate into numerous individual trials. See Wood, 994 S.W.2d at 803; Rio
Grande Valley Gas v. City of Pharr, 962 S.W.2d 631, 643 (Tex. App.--Corpus Christ 1997, pet.
dism'd). Consequently, class certification is often inappropriate in cases involving varying
misrepresentations. See Wood, 994 S.W.2d at 803. But in cases where the alleged
misrepresentations are substantially similar and the defendant is alleged to have engaged in a
common course of conduct, class certification may be appropriate. See Weatherly, 905 S.W.2d
at 651; Adams v. Regan, 791 S.W.2d 284, 289 (Tex. App.--Fort Worth 1990, no writ).

 In this case, the misrepresentations allegedly made to each class member are
substantially the same. Appellees alleged a common course of action and introduced evidence of
Easy Dental's advertisements, which promise "FREE unlimited tech support." The representations
in these advertisements and solicitations are the same or substantially similar in substance to the
other misrepresentations allegedly made to class members, notwithstanding the various mediums
by which they were communicated. We do not believe that commonality or predominance is
defeated merely due to the varying methods by which similar misrepresentations were made. We
therefore conclude that the essential issue of whether Easy Dental made material
misrepresentations is common to all class members and will not require the type of individualized
inquiries Easy Dental predicts.

 Finally, we reiterate that the primary measure of damages appellees seek is
disgorgement of the software's purchase price. While we recognize that there may be other
sources of consequential damages, the mere fact that some damages may have to be computed
separately for different class members does not preclude class certification. See Health & Tennis
Corp. v. Jackson, 928 S.W.2d 583, 590 (Tex. App.--San Antonio 1996, writ denied); Sun Coast
Resources, Inc. v. Cooper, 967 S.W.2d 525, 534 (Tex. App.--Houston [1st Dist.] 1998, pet.
dism'd w.o.j.); Angeles/Quinoco Sec. Corp. v. Collison, 841 S.W.2d 511, 516 (Tex.
App.--Houston [14th Dist.] 1992, no writ). As the trial court noted in its findings of fact and
conclusions of law, these damages may be efficiently determined through proof-of-claim forms,
individual damage hearings, or other manageable means. Consequently, we are confident that any
individual damages issues may be resolved in a "manageable, time-efficient, yet fair manner." See
Bernal, 43 Tex. Sup. Ct. J. at 712.

 If we were to accept Easy Dental's argument, we believe that the class action
mechanism would be rendered virtually useless. Easy Dental overstates plaintiffs' burden and
would demand that every issue be readily ascertainable from the class as a whole and that no
individual issues remain in order to permit certification. However, rule 42 only mandates that
common issues predominate. See Tex. R. Civ. P. 42(b)(4). Certainly, class certification would
be practically impossible if a finding of complete commonality with respect to all issues were
required.

 Finally, as stated previously, our review is strictly limited to determining whether
the trial court abused its discretion in ordering class certification. See Rainbow Group, Ltd., 990
S.W.2d at 356; Vinson, 880 S.W.2d at 823. Trial courts are afforded broad discretion in deciding
whether to grant or deny a motion for class certification, and we may not substitute our judgment
for that of the trial court merely because we reach a different conclusion. See Rainbow Group,
Ltd., 990 S.W.2d at 356; Vinson, 880 S.W.2d at 823. A trial court abuses its discretion in
certifying a class only if it has failed to properly apply the law to the undisputed facts or has acted
arbitrarily, unreasonably, or without reference to any guiding principles. See Rainbow Group
Ltd., 990 S.W.2d at 356; Vinson, 880 S.W.2d at 823. We apply this discretionary standard of
review because the trial court, rather than the intermediate appellate court, is in the best position
as fact finder to judge whether certification is appropriate, which includes making the subjective
determination of whether common issues will predominate. Because of its experience handling
the case, the trial court is more familiar with the issues and arguments of the parties. The
appellate court, on the other hand, lacks the benefit of the trial court's unique experience and
knowledge with regard to the case. We also give the trial court broad discretion because it is the
court that will actually be burdened with handling and managing the litigation.

 Because the facts and circumstances here as evidenced by the record provide a
reasonable basis for the trial court's conclusion that common issues predominate, we are unable
to conclude that the trial court abused its discretion. We therefore overrule Easy Dental's second
issue.



Choice of Law


 In its third point of error, Easy Dental complains that the trial court abused its
discretion in applying Texas law to all the class members' claims. It maintains that a proper
choice-of-law analysis dictates that the trial court apply the law of multiple jurisdictions, which
would necessarily result in varying adjudications and thereby render the class action
unmanageable. See Tex. R. Civ. P. 42(b)(4)(D) (courts are to consider "the difficulties likely to
be encountered in the management of a class action" when determining whether common questions
predominate and whether class action is superior to other available methods). 

 For resolving conflicts-of-law issues, Texas has adopted the "most significant
relationship" test as articulated in the Restatement (Second) of Conflict of Laws (1971) (the
"Restatement"). See DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 679 (Tex. 1990); Duncan
v. Cessna Aircraft Co., 665 S.W.2d 414, 420-21 (Tex. 1984). In the absence of a valid choice-of-law provision, section 188(1) of the Restatement provides the general rule to apply in disputes
sounding in contract: "The rights and duties of the parties with respect to an issue in contract are
determined by the local law of the state which, with respect to that issue, has the most significant
relationship to the transaction and the parties under the principles listed in § 6."(10) Maxus
Exploration Co. v. Moran Bros., Inc., 817 S.W.2d 50, 53 (Tex. 1991) (quoting §188(1) of the
Restatement); DeSantis, 793 S.W.2d at 679. Section 188(2) of the Restatement provides that the
following factors shall be considered in analyzing a conflicts question arising from a contract
dispute: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of
performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence,
nationality, place of incorporation, and place of business of the parties." Maxus, 817 S.W.2d at
53 (quoting § 188(2) of the Restatement).

 Taking these factors into consideration, we concur with the trial court that the
relevant contacts in this case favor the application of Texas law with regard to appellees' contract
claims. As the trial court correctly noted in its findings of fact and conclusions of law, every
licensing agreement for the Windows subclass designated Texas law as the law to apply in the
event of suit. Likewise, each DOS licensing agreement that made any mention of the applicable
law specified that Texas law should govern. Furthermore, both the DOS software and the
Windows software were designed, developed, programmed, manufactured, and shipped from
Dallas, Texas. 

 We reach the same conclusion with regard to the law applicable to the class
members' tort-related claims for common-law fraud, negligent misrepresentation, and violations
of the DTPA and Unsolicited Goods Statute. The Restatement provides that "all conflicts cases
sounding in tort will be governed by the most significant relationship test as enunciated in §§ 6
and 145." Gutierrez v. Collins, 583 S.W.2d 312, 318 (Tex. 1979). While still considering the
specific guidance provided by section 145(11) and section 6 of the Restatement, we remain mindful
that appellees' tort-related claims are clearly derivative of, and completely interrelated with, their
claims for breach of contract. Thus, we apply much the same analysis. See Nunez v. Hunter Fan
Co., 920 F. Supp. 716, 721 (S. D. Tex. 1996). Upon considering all the relevant factors and
policy considerations, we conclude that Texas law should likewise apply to the plaintiffs'
remaining tort-related causes of action, all of which arise out of the parties' contractual
relationships. We overrule Easy Dental's third point of error.


Adequacy of Representation and Typicality


 In its final two issues, Easy Dental (1) attacks the adequacy of the representation
that the representatives of the DOS subclass will provide absent class members and (2) maintains
that the claims asserted by the DOS representatives are not typical of the absent class members'
claims.(12) See Tex. R. Civ. P. 42(a)(3), (4). As we have observed on at least one previous
occasion, "typicality and adequacy of representation are closely related, 'for demanding typicality
on the part of the representative helps ensure his adequacy of representation.'" Forsyth v. Lake
LBJ Inv. Corp., 903 S.W.2d 146, 150 n.6 (Tex. App.--Austin 1995, writ dism'd w.o.j.) (quoting
Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 485 n.27 (5th Cir. 1982)). Thus, we will
address these issues together.

 Before an action may be certified, the representatives must demonstrate that their
claims and defenses are typical of the claims and defenses of the class members. See Tex. R. Civ.
P. 42(a)(3). "Class representatives satisfy the typicality requirement when they show that their
claims have the same essential characteristics as those of the class as a whole." Microsoft, 914
S.W.2d at 613 (citing Chevron U.S.A., Inc. v. Kennedy, 808 S.W.2d 159, 162 (Tex. App.--El
Paso 1991, writ dism'd w.o.j.)); Wiggins v. Enserch Exploration, Inc., 743 S.W.2d 332, 334
(Tex. App.--Dallas 1987, writ dism'd w.o.j.). "To be typical, the named claims must arise from
the same event or course of conduct giving rise to the other class members' claims. The claims
must be based on the same legal theory." Microsoft, 914 S.W.2d at 613. However, "[t]he class
representatives' claims need not be identical or perfectly coextensive." Hi-Lo Auto Supply, L.P.
v. Beresky, 986 S.W.2d 382, 387 (Tex. App.--Beaumont 1999, no pet.). All that is required is
that the representatives' claims are substantially similar to those held by the class as a whole. See
id. The requisite degree of typicality in the class representatives' claims has been expressed as
a "substantial similarity or a nexus between the representative's injury and the injury to the class." 
Id. (citations omitted).

 Having surveyed the record, we conclude that the DOS representatives' claims are
typical of the absent class members' claims. Just as they have asserted on behalf of the absent
class members, the DOS representatives charge that Easy Dental sent and charged them for
unsolicited software in violation of the Texas Unsolicited Goods Statute. See Tex. & Bus. Com.
Code Ann. §§ 35.42, .45.(13) Likewise, the class representatives allege that Easy Dental falsely
represented that it would provide consumers free and unlimited technical support. Easy Dental
nevertheless contends that Presti's and Helig's fraud and DTPA claims are not typical of the class
members' claims because both dentists stated that they (1) relied on oral, rather than written,
misrepresentations and (2) never actually paid for the technical support for which they were
billed.(14) This argument is without merit.

 Essentially, Easy Dental invites us to consider the merits of appellees' claims, as
well as the merits of its defenses to appellees' claims. However, when deciding whether to certify
a class, a trial court is not to determine the merits of the suit. See Tana Oil & Gas Corp., 978
S.W.2d at 741, Employers Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self-Ins.
Fund, 886 S.W.2d 470, 473-74 (Tex. App.--Austin 1994, writ dism'd w.o.j.). Setting the merits
aside, it is clear that all the claims asserted by the class representatives and those raised on behalf
of the absent class members arise from the same events or course of conduct and are based on the
same legal and remedial theories. See Microsoft, 914 S.W.2d at 613. Furthermore, the injuries
alleged by the class representatives and those alleged on behalf of the absent class members are
substantially similar. See Hi-Lo Auto Supply, L.P., 986 S.W.2d at 387. Consequently, we hold
that the trial court did not abuse its discretion with regard to this point.

 In addition to satisfying the typicality requirement, the class representatives must
also show that they will fairly and adequately protect the interests of the absent class members. 
See Tex. R. Civ. P. 42(a)(4); Forsyth, 903 S.W.2d at 150. For there to be adequate
representation, the class representatives' interests must not be antagonistic to those of the
remaining class members, and class counsel must be sufficiently qualified and experienced to
prosecute the action vigorously. See Employers Cas. Co., 886 S.W.2d at 475. The critical
question is whether the class representatives, through their attorneys, will vigorously prosecute
the class claims. See Weatherly, 905 S.W.2d at 652; see also Rio Grande Valley Gas Co., 962
S.W.2d at 644 (class representatives must demonstrate willingness and ability to take active role
in and control litigation).

 In this case, Easy Dental does not challenge the adequacy of representation insofar
as the qualifications or experience of class counsel are concerned. Rather, appellant claims that
the representatives lack the requisite knowledge and commitment and will not vigorously represent
the class members. We disagree.

 The record provides more than a sufficient basis for the trial court's conclusion that
Helig and Presti possess the degree of knowledge and commitment necessary to serve as class
representatives. Both Helig and Presti provided depositions and appeared at the class certification
hearing. Presti testified that in order to protect the interests of the class, he would see the case
through to trial or settlement, zealously prosecute all the claims, and would not put his interests
ahead of the interests of the class. Likewise, Helig testified that he would continue to prosecute
the action and that, at the very least, he would place the interests of the class on the same level as
his own interests. Contrary to Easy Dental's assertions, the evidence in the record does not
clearly indicate that the representatives have relinquished all control over the litigation or relegated
to their attorneys the task of overseeing and safeguarding the interests of the DOS subclass. 

 Because there is adequate evidence in the record from which the trial court could
reasonably conclude that Helig and Presti will adequately represent the absent class members and
that their claims are typical of the absent class members' claims, we are unable to conclude that
the trial court abused its discretion. Accordingly, we overrule Easy Dental's final two issues.


CONCLUSION

 Having reviewed the record and considered the arguments of both parties, we
conclude that the trial court did not abuse its discretion in ordering class certification. The trial
court's order is affirmed.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: September 14, 2000

Publish


1. These problems included difficulty installing the software; difficulty converting files
from a DOS environment to a Windows environment; instability and "locking up"; recurring
operating errors; inaccurate account statements; printing difficulties; data corruption; lost
information and transactions; and slow processing.
2. By the time the trial court ordered class certification, appellees had amended their
petition to assert additional claims for unjust enrichment, declaratory judgment, and a cause of
action under Texas's Unsolicited Goods Statute. See Tex. Bus. & Com. Code Ann. §§ 35.42, .45
(West 1987). 
3. During the class certification hearings, the trial court ruled that Taylor was not an
adequate representative for the DOS subclass. The trial court then recessed and provided appellees
an opportunity to name a more suitable class representative. During that time, appellees amended
their petition to add two alternative DOS class representatives, Dr. Helig and Dr. Presti.
4. As we note in our discussion of Easy Dental's first point of error, the trial court also
certified the class under rule 42(b)(1)(A). However, because appellees concede that mandatory
class certification under that subsection was inappropriate, or at least unintended, our discussion
will be limited to determining whether the trial court's certification of a rule 42(b)(4) opt-out class
was proper.
5. Certification of a mandatory class under rule 42 is proper only if the prerequisites of
subdivision (a) are satisfied and, in addition, "the prosecution of separate actions by or against
individual members of the class would create a risk of (A) inconsistent or varying adjudications
. . . which would establish incompatible standards of conduct for the party opposing the
class . . . ." Tex. R. Civ. P. 42(b)(1). At least one court of appeals has held that situations where
some plaintiffs may win a monetary judgment while others may lose on identical facts do not
present a risk of "inconsistent or varying adjudications," as contemplated under the rule. See St.
Louis Southwestern Ry. Co. v. Voluntary Purchasing Groups, Inc., 929 S.W.2d 25, 32 (Tex.
App.--Texarkana 1996, no writ) (no risk of inconsistency exists where defendant is liable for
damages to one plaintiff but not another). But see Adams v. Reagan, 791 S.W.2d 284, 292 (Tex.
App.--Fort Worth 1990, no writ) (while federal counterpart to rule may be satisfied only if
absolute legal quagmire would result from varying adjudications, better state rule is to permit other
considerations in determining whether certification is appropriate).
6. This subsection provides in relevant part: "An action may be maintained as a class action
if the prerequisites of subdivision (a) are satisfied, and in addition: . . . (4) the court finds that the
questions of law or fact common to the members of the class predominate over any questions
affecting only individual members . . . ." Tex. R. Civ. P. 42(b).
7. See Tex. Bus. & Com. Code Ann. §§ 35.42, .45 (West 1987).
8. With respect to the damages issue, appellant analogizes the case at hand to the facts set
out in a recent, post-Bernal opinion issued by the Texarkana court of appeals, Entergy Gulf States,
Inc. v. Butler, No. 06-99-00082-CV (Tex. App.--Texarkana Aug. 1, 2000, no pet. h.) (op. on
reh'g). Entergy involved a suit by customers of an electric utility who sought to recover the
damages they incurred as a result of unreasonably lengthy power outages triggered by a storm. 
See Entergy, slip op. at 3. But unlike the situation here, the class members in Entergy suffered
varying degrees of damages from the disruption of electricity because they were without power
for different periods of time. Furthermore, unlike this case, the plaintiffs in Entergy included
claims for personal injuries.
9. Consumers are not required to prove reliance in order to recover for misrepresentations
under the DTPA. See Weitzel v. Barnes, 691 S.W.2d 598, 600 (Tex. 1985); Celtic Life Ins. Co.
v. Coats, 831 S.W.2d 592, 596 (Tex. App.--Austin 1992), aff'd as modified, 885 S.W.2d 96
(Tex. 1994).
10. Section 6 of the Restatement lists certain policy considerations that courts are to consider
when deciding what law to apply:


(a) the needs of the interstate and international systems, (b) the relevant
policies of the forum, (c) the relevant policies of the interested states and the
relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations, (e) the basic policies underlying
the particular field of law, (f) certainty, predictability and uniformity of
result, and (g) ease in the determination and application of the law to be
applied.


Maxus, 817 S.W.2d at 53 (quoting § 6 of the Restatement).
11. According to section 145 of the Restatement, in tort cases the factors a court should
consider: "(a) the place where the injury occurred, (b) the place where the conduct causing the
injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of
business of the parties, and (d) the place where the relationship, if any, between the parties is
centered." Gutierrez v. Collins, 583 S.W.2d 312, 319 (Tex. 1979) (quoting § 145(2) of the
Restatement).
12. Easy Dental does not challenge the trial court's finding that the claims asserted by the
representatives of the Windows subclass are typical of the claims belonging to the absent members
of the Windows subclass. Nor does it challenge the trial court's finding that the absent members
of the Windows subclass will be adequately represented. Consequently, our discussion of these
issues will relate only to the DOS subclass.
13. Easy Dental does not dispute that the class representatives' claims are typical of the class
members' claims in this respect.
14. Presumably, most members of the DOS subclass received and relied upon written
misrepresentations and actually paid for the technical support charges.


e prosecution of separate actions by or against
individual members of the class would create a risk of (A) inconsistent or varying adjudications
. . . which would establish incompatible standards of conduct for the party opposing the
class . . . ." Tex. R. Civ. P. 42(b)(1). At least one court of appeals has held that situations where
some plaintiffs may win a monetary