RAINBOW GROUP, LTD. and
Alan Sager, Appellants,

v.

Josephine JOHNSON, Jennifer Casey,
Seantel Wilmes and Ava Lott,
Appellees.

No. 03–93–00431–CV.

Court of Appeals of Texas,
Austin.

March 4, 1999.

Released for Publication May 6, 1999.

Jennifer S. Riggs, Hill Gilstrap Adams & Graham, Austin, for Appellants.

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

Edward J. Tuddenham, Wiseman, Durst & Tuddenham, Austin, for Appellees.

Before Justices KIDD, PATTERSON and POWERS.*

KIDD, Justice.

Appellants, Rainbow Group, Ltd. and Alan Sager (collectively, "Rainbow Group"), bring this interlocutory appeal of an order certifying a class, represented by Josephine Johnson and others, of former and current hairstylists employed by Rainbow Group at the company's Supercuts stores. Class members allege that Rainbow Group breached the hairstylists' oral employment contracts by preventing them from clocking in during hours for which they were scheduled to work and refusing to pay them for attendance at mandatory store meetings. In six points of error, Rainbow Group charges the trial court with abuse of its discretion in (1) finding that the class is so numerous that joinder of all individual members is impracticable; (2) finding the required commonality necessary for maintenance of a class; (3) finding that the claims of the representative parties are typical of the claims of the class; (4) finding the named parties to be adequate representatives of the class; (5) finding that common questions of fact and law predominate; and (6) finding class certification to be a superior method of adjudicating the controversy. We will affirm the order of the trial court.

## BACKGROUND

The underlying cause of action involves Rainbow Group's alleged breach of the employment contracts held by current and former hairstylists employed at Rainbow Group's Supercuts stores.[1] Rainbow Group owns and operates a chain of hair care salons in several cities in Texas, including Abilene, Austin, San Angelo, and Tyler. Members of the hairstylist class

---

1. Rainbow Group owns and operates a chain of hair care salons under the name "Supercuts." For convenience, we will refer to the stores collectively as "Rainbow Group."

claim that Rainbow Group failed to pay for all hours hairstylists were scheduled for work and required to be on the premises. In particular, the class members complain that (1) they were often prevented from "clocking in" at their scheduled work times if the stores were not sufficiently busy; and (2) they were not paid for attendance at mandatory employee meetings.

All hairstylists were employed on an at-will basis under individual, oral employment contracts. Although Rainbow Group did not provide a standard written employment contract, Supercuts had one employee manual, one employee orientation form and one set of employment policies applicable to all hairstylists. The Supercuts employee manual refers to Rainbow Group's clocking-in policy as follows:

### Time Cards

#### Clocking in and Out is Mandatory!

Time cards are used as a means of accurately recording hours worked and calculating pay. They record regular hours worked, meal periods, overtime, absences, vacations and tips. Accordingly, employees should record the time they begin and end each work day, the beginning and end of each meal period, and the beginning and end of any split shift.

The dispute between Rainbow Group and the hairstylists involves alleged underpayment during 1988 and subsequent years. Members of the hairstylist class contend that store managers systematically refused to allow hairstylists to clock in at the beginning of their scheduled shifts, or after they had returned from lunch if there were not enough customers in the store. They allege that hairstylists had to wait on the premises, off the clock, until there were enough customers desiring hair cuts to justify paying the hairstylists' wages. The named plaintiffs, as well as the class as a whole, include hairstylists who sometimes acted as shift managers. Class members allege that they are entitled to compensation for the hours they were "held off the clock" and for hours they attended mandatory store meetings and were not paid.

Rainbow Group denies that there existed a policy to hold hairstylists off the clock and asserts that its policy was to pay hairstylists for attending all mandatory meetings.

Class members further contend that all employment contracts in Texas contain implicit requirements based upon the Fair Labor Standards Act,[2] including the requirement that employees be paid for all hours they are required to be at work. Rainbow Group responds that the claims of the class must be based solely on Texas contract law or else the claims are removable to federal court.[3] The class contends that jurisdiction is proper because FLSA regulations are incorporated into Texas work contracts as a matter of law.

In June 1993, the trial court conducted a hearing to consider the hairstylists' motion to certify as a class all hairstylists employed by Rainbow Group since February 20, 1988. After hearing argument from both sides, the trial court certified the class. Rainbow Group brings this interlocutory appeal from the trial court's order certifying the class.[4]

---

2. *See* 29 U.S.C. §§ 201–219 (West 1998).

3. Based on the hairstylists' second amended pleadings, which included the assertion that Rainbow Group violated the Fair Labor Standards Act, Rainbow Group removed to federal court in September 1993. The federal magistrate certified the class and conducted a trial on the merits. The magistrate entered judgment for Rainbow Group; the class members appealed. In February 1997, the Fifth Circuit Court of Appeals vacated the judgment based upon improper removal to federal court and remanded the cause to state court.

4. Although Rainbow Group appealed class certification to this Court in 1993, proceedings were stayed once the cause was removed to federal court. After the federal magistrate's judgment was vacated and the cause was remanded to state court, Rainbow Group revived its interlocutory appeal.

## REQUIREMENTS OF CLASS CERTIFICATION

■ The plaintiffs have the burden of establishing their right to maintain an action as a class action, but an extensive evidentiary showing in support of a motion for class certification is generally not required. *Morgan v. Deere Credit, Inc.,* 889 S.W.2d 360, 365 (Tex.App.—Houston [14th Dist.] 1994, no writ). Texas law favors class certification because a certified class may be amended or decertified at a later stage of the proceedings. *Id.* Texas Rule of Civil Procedure 42(a) sets out the following prerequisites for certification of a class action:

(1) the class is so numerous that joinder of all members is impracticable [*numerosity*];

(2) there are questions of law or fact common to the class [*commonality*];

(3) the claims or defenses of class representatives are typical of the claims or defenses of the class [*typicality*]; and

(4) class representatives will fairly and adequately protect the interests of the class [*adequacy of representation*].

Tex.R.Civ.P. 42(a).

An action may be maintained as a class action if the plaintiff establishes the four prerequisites of Rule 42(a), and proves at least one of the criteria for class maintenance in Rule 42(b). *See* Tex.R.Civ.P. 42(b); *see also Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 149 (Tex.App.—Austin 1995, writ dism'd w.o.j.). The trial court certified this class under Rule 42(b)(4), finding "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members [*predominance*], and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy [*superiority*]." *See* Tex.R.Civ.P. 42(b)(4).

The trial court found that the hairstylists met all the requirements of Rule 42(a).

Moreover, the trial court found that the class also met the requirements of Rule 42(b)(4). Consequently, the trial court certified the class. Rainbow Group challenges the trial court's findings on each requirement of Rules 42(a) and 42(b)(4). We will address each of these criteria in turn.

## STANDARD OF REVIEW

■ Our review of this cause is limited to a determination of whether the trial court abused its discretion in certifying the class. *See Hutchins v. Grace Tabernacle United Pentecostal Church,* 804 S.W.2d 598, 601 (Tex.App.—Houston [1st Dist.] 1991, no writ). A trial court has broad discretion in determining whether to grant or deny class certification, and an appellate court must not substitute its judgment for that of the trial court. *American Express Travel Related Servs. Co. v. Walton,* 883 S.W.2d 703, 707 (Tex.App.—Dallas 1994, no writ). Even if a trial court determines an issue differently than would an appellate court, the ruling does not necessarily constitute an abuse of discretion. *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 371 (Tex.App.—El Paso 1993, no writ) (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)); *see also Vinson v. Texas Commerce Bank—Houston,* 880 S.W.2d 820, 824 (Tex.App.—Dallas 1994, no writ). In determining whether a matter should be litigated as a class action, a trial court abuses its discretion if its decision is arbitrary, unreasonable or without reference to any guiding principles. *Dresser Indus.,* 847 S.W.2d at 371. A trial court may also abuse its discretion by failing to apply the law to undisputed facts, but does not abuse its discretion if it bases its decision on conflicting facts. *Vinson,* 880 S.W.2d at 823.

■ In making its class certification decision, the trial court can consider the pleadings and other material in the record, along with any evidence presented at the

hearing. *Employers Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self-Ins. Fund,* 886 S.W.2d 470, 474 (Tex. App.—Austin 1994, writ dism'd w.o.j.). We view the evidence in the light most favorable to the trial court's action, entertaining every presumption that favors its judgment. *Vinson,* 880 S.W.2d at 823; *see also Texas Dep't of Mental Health & Mental Retardation v. Petty,* 778 S.W.2d 156, 160–61 (Tex.App.—Austin 1989, writ dism'd w.o.j); *Brittian v. General Tel.,* 533 S.W.2d 886, 889 (Tex.Civ.App.—Fort Worth 1976, writ dism'd) (citing *Richardson v. Kelly,* 144 Tex. 497, 191 S.W.2d 857 (1945)).

## DISCUSSION

*Numerosity*

■ In its first point of error, Rainbow Group contends that the trial court abused its discretion in certifying the hairstylists as a class because the class is not made up of sufficient numbers to require class certification. Rainbow Group specifically disagrees with the court's finding that the class consists of at least 400 current and former hairstylists. They argue that the total number of hairstylists employed is not determinative of the number affected and hence, eligible for inclusion in the class. Rainbow Group contends that actual complaints from hairstylists arose from only a few stores. Additionally, Rainbow Group notes that 87 hairstylists signed affidavits indicating that they did not want to be involved in the present lawsuit.

■ Numerosity is not based on numbers alone. *See Union Pacific Resources Co. v. Chilek,* 966 S.W.2d 117, 120 (Tex.App.—Austin 1998, pet. dism'd w.o.j.). Rather, the test is whether joinder of all members is practicable in view of the size of the class and includes such factors as judicial economy, the nature of the action, geographical location of class members, and the likelihood that class members

would be unable to prosecute individual lawsuits. *Id.* Additionally, since class certification is not based on the merits of members' claims, proponents are not required to establish a prime facie case for class certification. *Id.* Numerosity can therefore be established by the number of *potential* class members, not those proven to have been affected.

The trial court concluded that the hairstylist class consisted of at least 400 current and former hairstylists employed by Rainbow Group, and found the 87 affidavits to be legally irrelevant to the issue of numerosity.[5] Even excluding those 87 hairstylists, the trial court found that the number and geographic dispersion of the remaining class members would make joinder impracticable. Rainbow Group employed hairstylists in twelve stores throughout Texas. Given the number and geographical dispersal of current and former hairstylists employed by Rainbow Group, the trial court did not abuse its discretion in determining that joinder of all members would be impracticable. Therefore, Rainbow Group's first point of error is overruled.

*Commonality*

■ In its second point of error, Rainbow Group challenges the trial court's finding of commonality—that questions of law and fact exist that are common to the class. Rainbow Group contends that because each hairstylist was employed under an individual oral contract, the elements of each contract differ and must be proven separately. Rainbow Group further contends that the individual hairstylists had different expectations regarding the number of hours each would work and how each would be compensated. Finally, Rainbow Group argues that, by cashing their paychecks and continuing to work for Rainbow Group, each hairstylist acceded to Rainbow Group's "objectionable practices" and accepted a modified oral employment

---

**5.** The trial court noted in its findings of fact that there existed evidence that the hairstylists

who were asked to sign these affidavits feared professional consequences of not signing.

contract. To prove such acceptance, Rainbow Group contends it must show that each hairstylist had actual knowledge of the modified terms. As a result, Rainbow Group argues that the employment contracts are not common to each class member.

Rule 42(a)(2) does not require that all, or even a substantial portion, of the legal and factual questions be common to the class. *Dresser Indus.*, 847 S.W.2d at 372. It requires only that *some* legal or factual questions be common to the class. *Reserve Life Ins. Co. v. Kirkland,* 917 S.W.2d 836, 842 (Tex.App.—Houston [14th Dist.] 1996, no writ).

The trial court found that, although hairstylists were employed under individual oral contracts, the terms of employment presented fact questions common to the class. Rainbow Group maintained one employee manual, one employee orientation form, and one set of employment policies for use in all of its stores. Moreover, the disputed fact issue of whether Rainbow Group had a policy of holding hairstylists off the clock or refusing to pay hairstylists for mandatory meetings applies commonly to all class members. The trial court also found questions of law common to the class, including whether holding hairstylists off the clock violated the work contracts under which the hairstylists were employed and whether hairstylists were entitled to their regular hourly rate of pay for the hours they were attending mandatory meetings.

Rainbow Group's affirmative defenses also raised common issues, including whether hairstylists were required to exhaust company grievance procedures before filing suit and whether the individual employment contracts were modified by accepting paychecks or continuing to work for Rainbow Group. These issues are sufficient to support the trial court's finding of commonality. Rainbow Group's second point of error is overruled.

### Typicality

In its third point of error, Rainbow Group contends that the trial court abused its discretion in certifying the class because the claims and defenses of named hairstylists are not typical of the claims and defenses of the class as a whole. Specifically, Rainbow Group asserts that typicality is destroyed by including in the class of hairstylists those hairstylists who functioned from time to time as shift managers. Rainbow Group contends that since these hairstylist/shift managers are willing to testify that as employer representatives they also kept employees under their control off the clock, these hairstylist/shift managers have a conflict of interest which sets them at odds with other members of the class.

The United States Supreme Court has held that the typicality requirement mandates that the representative "possess the same interests and suffer the same injury." *Dresser Indus.*, 847 S.W.2d at 373 (citing *East Texas Motor Freight Sys., Inc., v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)). Although it is not necessary that the named representative suffer *precisely* the same injury as other class members, there must be a nexus between the injury suffered by the representative and the injuries suffered by other members of the class. *Id.*

The trial court found questions of law and fact common to the class, and concluded that the named hairstylists' injuries were typical despite variations in hiring dates, pay rates, and the *status* of some named hairstylists as shift managers. All named hairstylists accuse Rainbow Group of holding them off the clock, even those hairstylists/shift managers who admit to participating in the practice when they were functioning as members of Rainbow Group's management.

Additionally, the trial court properly found that it should err in favor of certifying a class since the class may be modified or decertified should later developments

during the course of discovery or the trial so require. *Life Ins. Co. of Southwest v. Brister,* 722 S.W.2d 764, 774–75 (Tex. App.—Fort Worth 1986, no writ). If a conflict should arise, the trial court can decertify the class, create a subclass, remove those hairstylists who also served as shift managers, or replace the named plaintiffs with others more typical of the class as a whole. We cannot conclude that the trial court abused its discretion in certifying the class given the trial court's continuing ability to monitor the class and to modify it should the need arise. Rainbow Group's third point of error is overruled.

*Adequacy of Representation*

■ In its fourth point of error, Rainbow Group challenges the trial court's finding that the class representatives will fairly and adequately represent the interests of the entire class. Rainbow Group claims that the hairstylists' interests conflict with the interests of class representatives who admit to holding other hairstylists off the clock, thereby precluding the latter from serving as class representatives. Additionally, Rainbow Group claims that three of the four named hairstylists have considered settling the case, which disqualifies them as class representatives. Finally, Rainbow Group asserts that the hairstylists' attorney, by his agreement to indemnify the class for the costs of litigation, has a direct economic interest in the litigation which conflicts with the economic interests of the class.

■ In determining the adequacy requirement, the trial court must inquire into the zeal and competence of class counsel and into the willingness and ability of the representatives to take an active role in and control the litigation, and to protect the interests of the absentees. *Adams v. Reagan,* 791 S.W.2d 284, 291 (Tex.App.—Fort Worth 1990, no writ). The primary issue to be considered is whether conflict or antagonism exists between the interests of the representatives and those of the remainder of the class. *Id.* However, only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Id.*

■ The trial court found that the named hairstylists understand the nature of their claims and are ready, willing and able to represent the interests of the class members. The class representatives have demonstrated their willingness to prosecute the class claims through their testimony and six-year commitment to the cause. The trial court found no conflicts between the named hairstylists and the class members. Class representatives and all class members seek reimbursement from Rainbow Group for hours they were held off the clock. The hairstylists who acted as shift managers, although they admit holding other hairstylists off the clock, testified that they did not do so of their own initiative but on the express direction of shop managers or other Rainbow Group officials. We reiterate that the trial court enjoys discretion to modify or decertify the class should conflicts of interest arise later in the proceedings. *Brister,* 722 S.W.2d at 774–75. Additionally, approval of a class action settlement lies within the sound discretion of the trial court. *General Motors Corp. v. Bloyed,* 916 S.W.2d 949 (Tex. 1996). Therefore, the trial court can protect absent class members from inequitable settlements.

The trial court also determined class counsel to be experienced in class action litigation and capable of representing the class. The trial court found no conflict of interest between counsel and the class. We do not find that the trial court abused its discretion in determining that class members are fairly and adequately represented. Rainbow Group's fourth point of error is overruled.

The trial court did not abuse its discretion in finding that the elements of Rule 42(a) for class certification are satisfied. Having satisfied the prerequisites of Rule 42(a), a class must seek certification under one of the grounds listed in 42(b). *See*

Tex.R.Civ.P. 42(b); *see also Forsyth,* 903 S.W.2d at 149. The trial court certified this class under Rule 42(b)(4), holding that common questions of law or fact predominate over questions affecting individual members, and that a class action is superior to other available methods of adjudicating the controversy. Rainbow Group challenges the trial court's findings of predominance and superiority in its final two points of error.

*Predominance*

■ In its fifth point of error, Rainbow Group contends that common questions of law or fact do not predominate over questions affecting individual class members. Although the meaning of "predominate" is not clear under the terms of 42(b)(4), the case law requires that the existence of common questions in a claim is not in itself sufficient for class certification and the court has a duty to evaluate the relationship between the common and individual issues in each case to be certified under this subsection. *Brister,* 722 S.W.2d at 772. The test for the courts in evaluating the predominance issue is not whether the common issues outnumber the individual issues, but instead whether common or individual issues will be the object of most of the efforts of the litigants and the court. *Id.*

■ Rainbow Group argues that the substantive issues in the case are (1) whether a contract existed between Rainbow Group and each individual hairstylist, (2) the individual terms of each alleged contract, and (3) the occurrence and extent of any breach. The trial court determined that Rainbow Group employed all hairstylists under oral contracts and regulated hairstylists' conduct with one set of employment policies contained in one common employee manual. Breach of the contracts will be determined by whether Rainbow Group had a policy or custom of holding hairstylists off the clock or refusing to pay them for mandatory meetings. The trial court found that these common issues predominate and their resolution will control

the outcome of the litigation. Moreover, in cases in which it appears that common issues *may* predominate over individual issues, the most efficient approach for the trial court is to certify the class, and, if necessary after the case has developed, to dissolve or modify the class if common questions do not predominate at trial. *See id;* *see also Kirkland,* 917 S.W.2d at 843; *Dresser Indus.,* 847 S.W.2d at 375. Therefore, we will not disturb the trial court's discretionary findings on predominance. Rainbow Group's fifth point of error is overruled.

*Superiority*

■ In its sixth point of error, Rainbow Group disputes that class action is the superior method of adjudicating this controversy. Rainbow Group argues that individual joinder is practicable because existing allegations are geographically confined and limited in number, and there is no indication of how many other hairstylists will choose to opt into the class.

■ Repeated litigation of common issues in individual actions is "grossly inefficient, costly and a waste of judicial resources." *Adams,* 791 S.W.2d at 292. In determining whether a class action is superior to other available methods, the trial court should consider what other procedures exist for disposing of the dispute and compare those to the judicial resources and potential prejudice to absent class members involved in pursuing the class action. *Brister,* 722 S.W.2d at 772. The trial court determined class certification to be superior to other methods of adjudication. We agree. The testimony of many hairstylists will be necessary for the class to establish Rainbow Group's custom of holding hairstylists off the clock and for Rainbow Group to defend against that claim. Doing this once will prevent wasting judicial resources. Additionally, individual claims are small, so individual actions would be prohibitively expensive. Rainbow Group notes that hairstylists may

file pay disputes individually with the Texas Employment Commission.[6] However, this option for hairstylists is not mandatory, and there is no indication that such a resolution would be more efficient than a single trial to adjudicate all disputes. The trial court did not abuse its discretion. Rainbow Group's sixth point of error is overruled.

## CONCLUSION

Having concluded the trial court did not abuse its discretion in finding numerosity, commonality, typicality, adequacy of representation, predominance, and superiority, we affirm the certification of the class.

---

**6.** *See* Tex. Lab.Code Ann. §§ 61.001–.095 (West 1996).