**Affirmed and Opinion Filed June 23, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01623-CV

**LIFE PARTNERS, INC., Appellant**
**V.**
**HELEN Z. MCDERMOTT, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-02966**

## MEMORANDUM OPINION
Before Justices Bridges and Lang[1]
Opinion by Justice Bridges

Life Partners, Inc. appeals the trial court's order certifying the underlying action as a class action. In four issues, Life Partners argues the trial court erred in (1) failing to conduct a rigorous analysis to determine whether all prerequisites to certification were met; (2) failing to consider the res judicata risks to the absent class members; (3) finding that Michael McDermott and plaintiff's counsel were adequate representatives of the class; and (4) finding that the numerosity requirement was met. We affirm the trial court's order.

In March 2011, Helen McDermott, individually and on behalf of all others similarly situated, filed her original petition against Life Partners. The petition alleged Life Partners is

---

[1] The Honorable Mary L. Murphy was on the panel and participated at the submission of this case. Due to her resignation from this Court on June 7, 2013, she did not participate in the issuance of this Opinion. *See* TEX. R. APP. P. 41.1(a), (b).

"one of the oldest and most active companies in the United States engaged in the secondary market for life insurance known generally as 'life settlements.'" The petition defined a life settlement as the sale of an existing life insurance policy by the policyholder (who is typically an ill and/or elderly person) to another party. The price of the policy is negotiated and sold by the policyholder at a discount to the face amount. By selling a life insurance policy, the policyholder receives an immediate cash payment while the purchaser takes an ownership interest in the policy at a discount to its face value and receives the full amount of the death benefit paid out under the policy when the insured dies. A life settlement is often purchased by a group of investors who each buy only a fractional interest in a given policy.

The original petition alleged that, when purchasing a life settlement, a purchaser agreed to not only provide funds for a payment that would go to the policyholder but also to provide additional funds for an escrow account that would be used by an escrow agent to maintain the policy by paying premiums as required until the policy matured. An estimated maximum life expectancy of the policyholder/insured was determined by Life Partners, and the purchaser provided funds to be escrowed in the amount that would be required to pay insurance premiums to maintain the policy for the full estimated maximum life expectancy. In the event the initial escrow was depleted before the policy matured, the purchaser agreed to contribute additional amounts to the escrow in order to maintain the policy. In the event the policy matured earlier than the estimated maximum life expectancy, all unused amounts for premiums remaining in the escrow account were to be returned to the purchaser. Under the terms of the purchase agreement, Life Partners acted as the purchaser's agent and attorney in fact with respect to the escrow agent.

In January 2008, McDermott placed $12,500 in escrow for a .23% fractional interest in a life settlement with Life Partners for a policy number ending in 7322L (the Gummelt policy).

The life settlement transaction was "funded" on April 23, 2008. Life Partners represented that the annual premiums for this policy were $392,397. According to Life Partners, the policyholder's maximum estimated life expectancy was five years. Thus, all of the purchasers together provided $1,961,985 to be placed into escrow for the payment of premiums as needed to maintain the policy. However, the policyholder died earlier than expected in June 2009. On July 8, 2009, R. Scott Peden, Life Partners' president, sent a letter to the insurance carrier stating in part "According to a recent audit on the premium history of the above-referenced policy [the Gummelt policy] a scheduled premium of $374,250 was paid on December 11, 2008. This payment would have been sufficient to carry the coverage through to December 2009. However, one day prior, on December 10, 2008, a payment of $872,750 was also made on this policy. This payment should not have been made and we request that it be refunded to us at your earliest convenience." The carrier did not refund the payment.

Because the policy matured earlier than the estimated maximum life expectancy, the amount placed into escrow exceeded the cost of insurance, and McDermott's share of this excess was supposed to be returned to her. McDermott alleged Life Partners did not refund her full pro-rata share of the amount she had placed in escrow for policy maintenance. Instead, she alleged Life Partners asserted it had authorized additional "early" payments from the escrow account over and above the amount necessary for policy maintenance, and the money in question was not in the escrow account any longer. McDermott's petition alleged Life Partners claimed it was seeking to recoup these payments and acknowledged that McDermott would be entitled to her pro-rata share of any such recovery from the insurance company.

On behalf of herself and all others similarly situated, McDermott asserted claims for breach of contract, breach of fiduciary duty, and unjust enrichment. In a subsequent pleading,

Michael McDermott, as attorney-in-fact, was substituted for McDermott as the putative class representative. In June 2012, McDermott filed a motion to certify class.

In October 2012, Life Partners filed its response in opposition to the motion to certify the class. Life Partners asserted every potential member of the putative class purchased interests in life settlements separate from the Gummelt policy. Therefore, class adjudication could result in the preclusion of claims based on the putative class members' other purchases. Life Partners argued the potential res judicata implications were "especially strong" because every member of the putative class was also a member of at least one other putative class action currently pending against Life Partners. In addition, Life Partners argued Michael McDermott was not an adequate class representative because he lacked sufficient knowledge of the facts and claims in the suit, and he had a "readily discernible conflict of interest with the class" based upon his personal motivation to pursue the claims in this action regardless of the potential ramifications to class members and the res judicata implications of such claims. Life Partners argued "it may be inferred that what is motivating Mr. McDermott to serve as the lead Plaintiff in this case is not an altruistic desire to look out for the best interests of the other putative class members to obtain their share of a potential $64,000 damage award, but a desire to see Life Partners harmed through the instant litigation."

As to class counsel Jim Orr, Life Partners asserted he was not adequate because he was pursuing this class action without regard to the res judicata risks for the absent class members. Life Partners argued Orr had a conflict of interest in pursuing multiple class actions against Life Partners, without regard to the best interests of the respective class members in each action. Again, Life Partners alleged "significant res judicata implications" inherent in each action and claimed Orr acted without regard to those implications.

McDermott filed a reply in support of the motion to certify class in which he reiterated this case concerns a single life settlement, the Gummelt policy, and the legality of a one time "prepayment" of $872,750 to the carrier. McDermott argued Life Partners exaggerated the possible reach of res judicata in a situation McDermott characterized as involving class members who "may also have other claims for completely different damages based on completely different wrongs and/or based on completely different life settlement policies." McDermott argued the class members' other unrelated claims based on different life settlements was no bar to certifying this class asserting only claims based on the Gummelt prepayment.

As to whether McDermott and class counsel were "adequate," McDermott emphasized they were not "abandoning" any claims belonging to the class. On the contrary, McDermott pointed out class counsel was pursuing claims for failing to optimize premiums against Life Partners in Texas and California. Further, class counsel was pursuing claims regarding life expectancy determinations in a separate suit. As class representative, McDermott emphasized his vigorous prosecution of the class claim through his attorney. Regarding his knowledge about the case, McDermott argued he was very familiar with the case and pointed out it was his idea to file the lawsuit "to recover the full amount he felt his mother was due."

In November 2012, the trial court conducted a hearing on the motion for class certification. The record indicates the hearing began at approximately 4:32 p.m. At the beginning of the hearing, the trial judge stated she was familiar with the case and "read everything, all of your pleadings last night." Orr, on behalf of the class, offered thirty-one exhibits into evidence, representing "all of the exhibits that were attached to our motion and also to our reply." Counsel for Life Partners moved to strike Exhibit 28 due to an untimely expert witness designation, and the trial judge granted the motion. Counsel for Life Partners also objected to Exhibit 23, Orr's affidavit, on the basis Orr "has made himself a fact witness," did

not have personal knowledge, and made conclusory claims. The trial judge agreed that parts of Orr's affidavit were inadmissible, requested from counsel for Life Partners a "granulated order" specifying objections to each paragraph or sentence in the affidavit, and admitted Orr's affidavit subject to the motion to strike. Counsel for Life Partners was given an additional opportunity to review the additional exhibits but raised no further objection.

Orr argued all the class members were in "the exact same spot." Life Partners treated all class members the same by sending them letters offering to pay less than they were owed. In arguing the propriety of certifying the class, Orr emphasized this case involves only the Gummelt policy and the "very specific one-time thing where they paid $872,250 in premiums that they shouldn't have paid." Orr argued the case "would not be res judicata of anything" and was a "discrete wrong on a single policy." Regarding the issue of whether McDermott was an adequate class representative, Orr argued McDermott did not want to "harm" Life Partners but was trying to make Life Partners pay what they were obligated to pay.

Counsel for Life Partners called Robert Peden, president of Life Partners, who testified concerning the nature of a life settlement and gave a general description of the manner in which purchasers like McDermott purchased an interest in a life settlement. Counsel entered McDermott's agreement with Life Partners into evidence. Peden testified Dr. Donald Cassidy provided the life expectancy estimate for the insured on the Gummelt policy. Peden testified he was aware of another putative class action brought by Orr involving claims that "premiums should have been paid on an optimized basis rather than a level basis." Peden testified he was aware of another putative class action involving claims of "unreasonably short life expectancies" issued by Dr. Cassidy. On cross-examination, Orr asked if there were any other lawsuits on file related to the Gummelt policy, and Peden testified "No, this is the only one."

Counsel for Life Partners entered into evidence two affidavits and seventeen exhibits for the court's consideration. Following the arguments of counsel, the trial judge stated she wanted "to go back and reread these cases." The trial judge invited further filings, stating "So I am reading all the cases, and I do want to look at your doc -- yeah, if you've got cases you want me to read, please."

The trial judge subsequently entered an order certifying the class. The order stated the trial judge had heard plaintiff's motion to certify and all evidence and argument of counsel and found (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of the claims of the class; (4) the representative parties will fairly and adequately protect the interests of the class; and (5) the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of the controversy. The order defined the class as "All persons residing in the United States who purchased any portion of a life settlement interest from Life Partners, Inc. in the Gummelt policy, American General Life Insurance Company, policy number #####7322L."

The order listed the elements of the claims asserted in the pleadings: breach of contract and breach of fiduciary duty. Under the heading "issues of law or fact common to the class members," the order stated "the overarching coming question in this case is whether the defendant breached a contractual or fiduciary duty owed in common to the class members by making a 'pre-payment' of insurance premiums on the subject life settlement policy."

Under the heading "issues of law or fact affecting only individual class members," the order stated "if the class is successful on liability, the amount of damages, if any, for each class

member is an issue of fact affecting only each individual class member, but it is the same calculation for each class member (% of policy ownership times amount of overpayment)."

Under the heading "issues that will be the object of most of the efforts of the litigants and the court," the order stated "whether Defendant breached a contractual or fiduciary duty in common to the class members with regard to the 'pre-payment' of insurance premiums on the subject life settlement policy." Under the heading "why the issues common to the members of the class do or do not predominate over individual issues," the order stated "Defendant's prepayment/overpayment is either actionable in every instance, or it is actionable in none. The primary liability question presented – whether Defendant breached a contractual or fiduciary duty in common to the class members with regard to the 'pre-payment'of insurance premiums on the subject life settlement policy – is the same for all class members. Individual damage calculations, if necessary, can be performed easily with basic math to determine, for example, what portion of the allegedly wrongful payment is attributable to a particular class member's money."

Under the heading "why a class action is superior to other available methods for the fair and efficient adjudication of the controversy," the order stated "the claims of all class members can be tried efficiently before a single jury based on class-wide proof. Whether the payment on the subject life settlement policy was in breach of duties owed by Defendant can be determined in this proceeding as to all class members far more efficiently than requiring that the same evidence to answer the same question be repeatedly presented in up to forty different individual proceedings. Further, the class is spread across eight different states and, especially given the amount at stake for each class member, joinder is impractical and the cost of essentially redundant proceedings in eight different jurisdictions is clearly inferior and would be neither a fair nor efficient way to adjudicate this controversy."

The order went on to again set forth the elements of breach of contract and breach of fiduciary duty and detailed the manner in which those claims would be tried in a manageable, time efficient manner. The order listed Life Partner's alleged defenses and indicated those defenses could be decided on a class-wide basis. The order directed that notice be given to members of the class of (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and (vi) the binding effect of a class judgment on class members under Rule 42(c)(3).

Finally, under the heading "Claims not being Adjudicated," the order stated "the Court refuses to decide any disputes or claims related to failure to optimize premiums or life expectancy estimates or assessments by Dr. Cassidy under this cause number 11– 02966." This appeal followed.

We review a class certification order for abuse of discretion. *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 696 (Tex. 2008) (citing *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex. 2004)). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992)). We do not, however, indulge every presumption in the trial court's favor, as compliance with class-action requirements must be demonstrated rather than presumed. *Id.* (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 691 (Tex. 2002)). Although a trial court generally has broad discretion to determine whether to certify a class action, it must apply a rigorous analysis to determine whether all certification requirements have been satisfied. *Id.* (citing *S.W. Refining Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000)). A proper analysis requires the trial court to venture beyond the pleadings and to "understand the

claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.* (quoting *Bernal*, 22 S.W.3d at 435). Where res judicata is an issue, trial courts should assess the Rule 42 requirements in light of res judicata's preclusive effect on abandoned claims when considering whether to certify a class. *Id.*

Under rule 42 of the Texas Rules of Civil Procedure, all class actions must satisfy four requirements: (1) numerosity – the class is so numerous that joinder of all members is impracticable; (2) commonality – there are questions of law or fact common to the class; (3) typicality – the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation – the representative parties will fairly and adequately protect the interests of the class. Tex. R. Civ. P. 42(a); *S.W. Bell Tel. Co. v. Mktg. on Hold, Inc.*, 308 S.W.3d 909, 919-20 (Tex. 2010).

These protections are not only procedural safeguards but are based in the Due Process clauses of the United States and Texas Constitutions to ensure that plaintiffs, whose interests are represented by another, have notice and an opportunity to be heard in the proceedings and that the class representative adequately represents their interests. *Id.* (citing *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 450 (Tex. 2007)). Life Partners claims McDermott fails rule 42's numerosity and adequacy requirements but does not challenge commonality or typicality.

In determining the adequacy requirement, the trial court must inquire into the zeal and competence of class counsel and into the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of the absentees. *Rainbow Group, Ltd. v. Johnson*, 990 S.W.2d 351, 357 (Tex. App.—Austin 1999, pet dism'd w.o.j.). The primary issue to be considered is whether conflict or antagonism exists between the interests of the representatives and those of the remainder of the class. *Id.* However, only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative

status. *Id.* Numerosity is not based on numbers alone; rather, the test is whether joinder of all members is practicable in view of the size of the class and includes such factors as judicial economy, the nature of the action, geographical location of class members, and the likelihood that class members would be unable to prosecute individual lawsuits. *Id.*

A class-action must also satisfy at least one of the requirements in rule 42(b). Here, McDermott sought to certify the class under rule 42(b)(3), which provides an action may be maintained as a class action if the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Tex. R. Civ. P. 42(b)(3). Rule 42 contains a list of non-exhaustive factors to aid a court in determining if (b)(3) certification is appropriate: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *Id.*; *S.W. Bell Tel. Co.*, 308 S.W.3d at 919.

In its first issue, Life Partners argues the trial court erred by failing to conduct a rigorous analysis to determine whether all prerequisites to certification were met before ruling on class certification. Specifically, Life Partners complains the trial court's failure to conduct a rigorous analysis is evidenced by the following: (1) the class certification hearing was "very brief;" (2) at the hearing, Life Partners' counsel was prevented from fully responding to all of Orr's arguments and presenting all of Life Partners' positions in opposition to class certification; (3) the trial judge never ruled on Life Partners' post-hearing motion for leave to conclude argument along with a proposed brief concluding argument in opposition to class certification; (4) the

certification order contained no discussion, analysis, or assessment of the res judicata effect on the absent class members' abandoned and unpled claims and its effect on the superiority and adequacy determinations with respect to class certification; and (5) the certification order contained no discussion, analysis, or assessment of McDermott's and Orr's adequacy in light of the evidence of McDermott's lack of knowledge about the claims and issues in the suit, the questions relating to McDermott's credibility, and "the apparent conflict of interest vis-à-vis McDermott's and Plaintiff's counsel's willingness to risk res judicata's preclusive effect on the absent class members' unpled or abandoned claims" against Life Partners.

As to the brevity of the class certification hearing and Life Partners' inability to present its arguments fully, Life Partners asserts the hearing was originally scheduled for 3:30 p.m. on a Friday and was only allocated fifteen minutes on the court's docket. As the record reflects, the hearing did not begin until approximately 4:30 p.m. Life Partners complains that "a portion of the already-postponed and very brief hearing" was spent on its motions to strike McDermott's untimely expert report and portions of Orr's affidavit, and its counsel was prevented from fully responding to all of Orr's arguments and presenting all of its "positions in opposition to class certification." However, the record reflects all of Life Partners' exhibits were admitted at the hearing, and it had an opportunity to question its witness without curtailment. Life Partners identifies no specific argument it was prevented from making. Further, Life Partners cites no authority for the proposition that the length of the certification hearing is relevant in assessing the rigor of a trial court's analysis in determining whether a class should be certified.

As to the trial court's failure to rule on Life Partners' motion for leave to conclude argument, the record shows the motion was not denied. The trial judge invited the parties to submit additional cases at the conclusion of the certification hearing. The issues raised in the motion for leave to conclude argument and the attached brief are the issues of res judicata

McDermott's inadequacy, lack of knowledge, and conflict of interest, all of which were already before the court.

Regarding the lack of analysis on the res judicata issue in the certification order, we note this argument raises virtually the same issue raised in Life Partners' second issue where it argues the trial court erred by failing to consider the res judicata risks to the absent class members before finding that the superiority and adequacy requirements were met. The record shows the trial judge indicated at the certification hearing that this case involves a discrete issue regarding the overpayment to the insurance carrier. At the hearing, counsel for Life Partners developed testimony that other class actions were pending involving alleged failures to optimize premiums and alleged problems with Dr. Cassidy's life expectancy calculations. Counsel for Life Partners argued the other class actions had res judicata implications in this case. The trial judge in this case, however, noted at the hearing that "the issues in Gummelt don't have any commonality . . . to any other policy." In the certification order, the trial judge made it clear "the Court refuses to decide any disputes or claims related to failure to optimize premiums or life expectancy estimates or assessments by Dr. Cassidy under this cause number 11– 02966." Thus, it appears the trial judge did consider the res judicata issue before making its findings, as reflected in its order.

Further, the certification order directed that class members should be given notice of their right to opt out of the class and the binding effect of a class judgment on class members. In *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 347 (Tex. App.—Dallas 2004, pet. denied), public accounting firm Grant Thornton appealed the trial court's order certifying a class of plaintiffs who brought claims against Grant Thornton relating to misstatements and omissions in the registration statement for the initial public offering of Bollinger Industries. Grant Thornton argued res judicata would bar all the class members from bringing independent suits

for common-law and statutory fraud and would bar certain class members from bringing suits under the federal securities act. *Id.* at 351-52. Grant Thornton argued that requiring the class members to give up such substantial rights in order to establish commonality demonstrated the inappropriateness of the class-action procedure in that case because the class action would not be superior to individual trials, the named plaintiffs would not provide adequate representation of the class, and the named plaintiffs' claims would not be typical of the class. *Id.* at 352. A panel of this Court concluded it need not ascertain, before the fact, whether res judicata might bar the class members' potential causes of action. *Id.* at 353. The Court reasoned the res judicata issue was not outcome determinative of the issue before the Court – whether the trial court properly certified the class. *Id.* Moreover, the Court noted, the certification order required notice to prospective class members of the right to opt out of the class. *Id.* The Court stated the record reflected that the trial court considered the adequacy of class representation issue in the context of claims splitting and authorized the class to proceed with safeguards designed to protect absent class members whose non-certified claims might be affected by the outcome of the class action. *Id.* The presence of these safeguards provided a basis for concluding that the class representatives would adequately represent any class members who declined to opt out of the class even if the res judicata effect of the judgment in the class-action might bar them from asserting any claims not asserted in the class-action. *Id.* The Court concluded that, in view of the record and the above provisions in the trial court's certification order, the doctrine of res judicata did not show the class-action was inappropriate. *Id.* Similarly, the certification order in this case requires notice to class members of their right to opt out and the binding effect of any judgment. Thus, res judicata did not show this class-action was inappropriate. *See id.* We overrule Life Partners' second issue.

As to the certification order's lack of analysis concerning McDermott's and Orr's adequacy, we note this argument is virtually the same as the issue raised in Life Partners' third issue asserting the trial court erred in finding that McDermott and Orr were adequate representatives of the class. The certification order contains the trial judge's finding that the representative parties will fairly and adequately protect the interests of the class. The trial judge expressly stated at the hearing on certification she had "read everything" and that she was going to reread "all the cases." Life Partners repeatedly, in its pleadings, exhibits, and arguments, raise the issue of McDermott's and Orr's inadequacy. Nevertheless, the trial judge in the certification order found that they were adequate.

Life Partners argues McDermott is not an adequate class representative "given his willingness to risk preclusion of abandoned or additional claims." Similarly, Life Partners argues Orr "evidences an unavoidable conflict of interest arising out of the res judicata implications" of the class-action. However, as stated above, the presence of safeguards in the certification order provide a basis for concluding the class representatives would adequately represent any class members who declined to opt out of the class even if the res judicata effect of the judgment in the class-action might bar them from asserting any claims not asserted in the class-action. *See Grant Thornton*, 133 S.W.3d at 353.

Life Partners further argues McDermott lacks credibility and familiarity with the litigation necessary to serve as an adequate class representative. In support of this argument, Life Partners cites McDermott's deposition testimony that he had done "nothing, really" to prepare for his deposition and had not read any documents; he believed the class was owed "close to a million dollars," and he testified it would surprise him to learn the class was owed less than $100,000 and his mother was owed around $2000; and he did not know if he regularly received copies of court filings or if Orr had made any settlement offers. McDermott points out

that, at the time of his deposition, he had only been class representative for two weeks. Life Partners argues McDermott has a clear conflict of interest with the rest of the putative class because he owns a business that offers life settlements, he was a licensee for Life Partners during the time his mother purchased her interest in the Gummelt policy, and he sought to be the lead plaintiff in this case in order to "see [Life Partners] harmed." However, the trial judge could have concluded this evidence showed McDermott was very familiar with the life settlement business and the underlying facts of this case and was highly motivated to pursue a successful outcome for the class. Our review of the record does not demonstrate a conflict that goes to the very subject matter of the litigation. *See Johnson*, 990 S.W.2d 351, 357.

As to Orr's adequacy as counsel for the class, Life Partners argues this case is "lawyer-driven" and Orr attested to factual issues in the case in his declaration in support of the motion to certify, thus creating a conflict of interest. The trial judge sustained many of Life Partners' objections to Orr's statements. To the extent the trial judge overruled objections to certain other statements, that is an evidentiary matter that does not demonstrate Orr's inadequacy as class counsel. Nor does Orr's representation of three other classes with claims against Life Partners show he is inadequate. We conclude the record shows the trial court considered McDermott's and Orr's adequacy in entering its certification order, and the trial court did not err in finding they were adequate. We overrule Life Partners' third issue. Having resolved against Life Partners all issues raised in Life Partners' first issue, we overrule its first issue.

In its fourth issue, Life Partners argues the trial court erred in finding that the numerosity requirement was met. The record shows there are thirty-eight members of the class living in eight different states. The trial judge found the primary liability question is the same for all class members, and individual damage calculations can be performed easily with basic math. The record indicates McDermott's claim is approximately $2000, and the other individual class

members have similarly modest claims. Under these circumstances, it would not be economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages. *See General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 952 (Tex. 1996). Life Partners makes much of the fact that members of the class have interests in additional policies and in other pending class actions; however, the record shows no class member is seeking to pursue an individual lawsuit on the pre-payment at issue here. Considering these factors, we conclude the trial judge did not abuse her discretion in finding the numerosity requirement was met. *See Johnson*, 990 S.W.2d at 357. We overrule Life Partner's fourth issue.

We affirm the trial court's order certifying the class.


121623F.P05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LIFE PARTNERS, INC., Appellant

No. 05-12-01623-CV          V.

HELEN Z. MCDERMOTT, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-02966.
Opinion delivered by Justice Bridges.
Justices Lang participating.

In accordance with this Court's opinion of this date, the trial court's order certifying the class is **AFFIRMED**.

It is **ORDERED** that appellee HELEN Z. MCDERMOTT recover her costs of this appeal from appellant LIFE PARTNERS, INC..

Judgment entered June 23, 2014

/David L. Bridges/

DAVID L. BRIDGES
JUSTICE